Antonio BADILLO, et al., Plaintiffs,

v.

The AMERICAN TOBACCO COMPANY, et al., Defendants.

Vito Dienno, et al., Plaintiffs,

v.

Liggett Group, et al., Defendants.

V. Arlene Christensen, Plaintiff,

v.

Philip Morris Companies, Inc., et al., Defendants.

Norman Selcer, et al., Plaintiffs,

v.

R.J. Reynolds Tobacco Company, et al., Defendants.

Nos. CV–S–98–1764PMP(PAL), CV–S–98–489–PMP(PAL), CV–S–98–717–PMP(PAL), CV–S–97–334–PMP(PAL).

United States District Court, D. Nevada.

July 2, 2001.

*FACTS AND PROCEDURAL HISTORY*

PRO, District Judge.

Four potential class action lawsuits against various tobacco companies are currently pending before this Court. The Plaintiffs in *Selcer v. R.J. Revnolds Tobacco Co., et. al.* are cigarette smokers. The Plaintiffs in *Badillo v. The American Tobacco Co., Inc. et. al., DiEnno v. Liggett Group, et. al.,* and *Christensen v. Philip Morris Cos., et. al.* are casino workers or former casino workers that have been exposed to second hand cigarette smoke. The Court has consolidated the above three cases under *Badillo v. The American Tobacco Co., Inc. et. al.,* CV–S–98–1764–PMP (PAL).

In the foregoing cases, Plaintiffs make various claims against the Defendant tobacco companies including strict liability, negligence, fraud, and misrepresentation. In addition, in each case, the Plaintiffs request medical monitoring in order to detect if they have any diseases as a result of their exposure to cigarette smoke.

Plaintiffs in the *Selcer, Badillo,* and *DiEnno* cases have filed Motions for Class Certification. The *Selcer* Plaintiffs currently seek certification only for medical monitoring and define the class as follows:

> All residents of the State of Nevada who currently smoke at least I pack per day of tobacco cigarettes for a 5 year consecutive period of time and who would participate in a program to monitor their medical condition for heart, lung and other diseases associated with long term exposure to tobacco smoke.

The *DiEnno* Plaintiffs also only seek certification for medical monitoring, and define two classes as follows:

> **Subclass A:** All never smokers who are Nevada residents, who are former full-time Nevada casino workers, and who worked in Nevada gaming areas for over five years, and who would participate in a program to monitor their medical condition for heart disease and lung disease caused by exposure to second hand smoke.

> **Subclass B:** All never smokers who are Nevada residents, who are full-time casino workers, other than table game dealers, and who have worked in Nevada gaming areas for over five years, and who would participate in a program to monitor their medical condition for heart disease and

lung disease caused by exposure to second-hand smoke.

The *Badillo* Plaintiffs do not limit their certification request to the medical monitoring issue, and they define two classes as follows:

**Subclass A:** All never smokers who are Nevada residents, who are presently Nevada table game dealers and have been full time table game dealers in Nevada casinos for at least the past five years, and who would participate in a program to monitor their medical condition for heart diseases and lung cancer caused by exposure to second hand smoke.

**Subclass B:** All Nevada residents who a presently Nevada table game dealers and have been full time table game dealers in Nevada for at least the past five years and who have not smoked for at least ten years, and who would participate in a program to monitor their medical conditions with regard to heart diseases caused by exposure to second hand smoke.

The *Christensen* Plaintiffs did not originally file a motion for class certification. In their First Amended Complaint, they state that they are bringing the suit on behalf of

all Casino employees that have worked or are presently working for a casino or gaming-related establishment or facility in which gaming of any type has been licensed by the Nevada State Gaming Commission ("casinos"), within the State of Nevada, and who did not regularly smoke cigarettes during or after the term of their employment, and have developed or in the future may develop disorders requiring medical treatment and/or medical expenses related to the inhalation of "second hand" cigarette smoke.

(1st Amended Complaint ¶ 48.) The *Christensen* Plaintiffs also request medical monitoring.

On March 5, 2001, the Christensen Plaintiffs filed a Joinder in Motion for Class Certification (# 208) seeking class certification of her strict liability cause of action for the following class:

All non-smokers who, as Nevada residents, worked as a full-time casino employee in the gaming areas for a period of not less

than five years between January 1, 1960, and February 8, 1999.

On June 2, 1999, upon the Court's own motion and pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, the Court certified the following issues to the Supreme Court of the State of Nevada:

(1) Whether Nevada common law recognizes a medical monitoring cause of action or remedy where medical testing facilitates the detection of diseases resulting from exposure to a toxic substance; and

(2) If Nevada common law would recognize a medical monitoring cause of action or remedy, what elements must a plaintiff prove to be entitled to medical monitoring.

Coterminous with the Order Certifying Issues to the Nevada Supreme Court (# 191), the Court entered an Order Staying Cases (# 192) which provided that all Motions for Class Certification in the above-referenced cases would be stayed pending ruling by the Supreme Court of the State of Nevada on the issues certified.

On January 30, 2001, the Supreme Court of the State of Nevada rendered its Opinion on the questions certified by this Court (# 203). The Court thereupon Ordered reciprocal briefing by the parties on the pending issues of class certification in light of the Opinion of the Nevada Supreme Court and lifted the Court's Order Staying Cases (# 201). The Remittitur from the Supreme Court of the State of Nevada (# 205) was received and filed in this Court on March 2, 2001. The parties to the above-referenced consolidated actions filed the Supplemental Memoranda in compliance with this Court's Order and on April 27, 2001, the Court conducted a hearing on all pending Motions for Class Certification in the above-referenced consolidated cases (# 218).

## DISCUSSION

In *Badillo v. American Brands, Inc.*, 117 Nev. Adv. Op. 4, 16 P.3d 435 (2001), the Nevada Supreme Court responded to the two questions certified by this Court as follows:

In light of the lack of consensus in other jurisdictions and the complex fact pattern of tobacco litigation and causality, we hold

that Nevada common law does not recognize a cause of action for medical monitoring. A remedy of medical monitoring may be available for an underlying cause of action, but neither party has briefed the issue nor set forth the cause of action to which it would provide a remedy. Therefore, we do not have enough information to provide an answer to the second certified question.

16 P.3d 435, 440 (2001).

Defendants contend that the ruling of the Nevada Supreme Court closes the book on the issue of whether medical monitoring is a viable cause of action or a viable remedy under Nevada law. The Court agrees that the Nevada Supreme Court has clearly stated that Nevada common law does not recognize a medical monitoring cause of action. The question of whether medical monitoring may constitute an available remedy as stated by the Nevada Supreme Court, however, must depend upon the underlying cause of action to which it is tied. In this regard, the Court also concurs with the Nevada Supreme Court that Plaintiffs have failed to demonstrate a viable cause of action to which medical monitoring could properly be tied as a remedy, and if so, whether certification of the classes proposed by Plaintiffs. is warranted.

Rule 23 of the Federal Rules of Civil Procedure governs class certification. To satisfy the requirements of Rule 23, Plaintiffs must establish that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representatives parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

If the requirements of Rule 23(a) are met, Plaintiffs must then show that their claims qualify under one of the three subparts of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 611–13, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The Court finds that Plaintiffs in each of the four consolidated cases herein have failed to meet their burden of satisfying all of the foregoing prerequisites under Rule 23.

### 1. Numerosity

Although Plaintiffs do not specify the size of the respective Plaintiff classes, Defendants do not contest that each of the Plaintiff classes in question would be so numerous that joinder of all members would be impracticable. The Court, therefore, agrees that the numerosity requirement under Rule 23(a)(1) is satisfied.

### 2. Commonality and Predominance

Numerous courts have recognized that the commonality requirement of Rule 23(a)(2) and predominance requirement of Rule 23(b)(3) are intertwined. This is because common factual or legal issues related to the resolution of the litigation alone may not be sufficient to satisfy the predominance requirement. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996). The Court finds that no judicial economy would be achieved by class action treatment in these cases.

Indeed, the claims advanced by the representative Plaintiffs as well as those of the proposed members of the Plaintiff classes are replete with individual issues such as causation, comparative fault, assumption of risk, product identification, statute of limitations and damages that Plaintiffs' ability to satisfy the commonality and predominance requirements of Rules 23(a) and ˙23(b)(3) is insurmountably frustrated.

For example, to prove causation in this case, Plaintiffs will likely need to show that they were exposed to a level of secondhand smoke which increased their risk of disease. Unlike the case of *Broin v. Philip Morris Companies, Inc.*, 641 So.2d 888 (Fla. 3rd DCA 1994), which involved flight attendants exposed to similar levels of secondhand smoke within the airplane cabins in which they worked, the Plaintiffs in the instant case allegedly sustained their injuries in signifi-

cantly different environments. It is beyond cavil that "casinos" can vary immensely in size and ventilation, or that ventilation systems have evolved over time. Attempting to craft sub-classes to fit the physical environments presented by a multitude of casinos is impracticable and defeats the value of proceeding as a class action.

Similarly, the products in question are not of a single identifiable brand or design, nor is it even clear that each of the Defendants was a manufacturer of the tobacco products which purportedly caused injury to Plaintiffs. Additionally, although probably not so in the case of full-time casino workers at table games, other employees of Nevada casinos perform a variety of work tasks in a variety of locations within the casinos. It does not require an expert to conclude that the exposure to secondhand tobacco smoke of an employee who works in one area of a particular casino would be different from that of an employee who works in another area. The permutations are endless and do not lend themselves easily to grouping under the rubric of a class action.

### 3. Typicality

■ Similarly, Plaintiffs fail to satisfy the typicality requirement of Rule 23(a) by their inability to demonstrate that their claims are typical of those of the entire class. This is particularly so given the ruling of the Nevada Supreme Court on the question certified that Nevada does not recognize a cause of action for medical monitoring.

Had the Nevada Supreme Court ruled otherwise, Plaintiff class representatives might be able to sustain an argument that their claims are representative because they were injured by exposure to tobacco smoke which supports a cause of action for medical monitoring for themselves and all other members of the Plaintiff classes. However, since medical monitoring is not a recognized cause of action in Nevada, and because the underlying tort claims of the various representative Plaintiffs and members of the Plaintiff classes which might arguably give rise to a remedy of medical monitoring are filled with the individual issues discussed above, the Court finds that Plaintiffs cannot meet the typicality requirement of Rule 23(a).

### 4. Adequacy of Representation

■ Given the failure to meet the commonality and typicality requirements, the Court also finds that Plaintiffs have failed to satisfy the adequacy of representation requirement of Rule 23(a) in that the proposed Plaintiff class representatives cannot adequately represent the interests of other Plaintiff members of the class with atypical claims. The fact that the claims of one smoker or one non-smoker are not typical of those of others in the proposed classes precludes the possibility that a named Plaintiff representative could adequately represent a class of other smokers or non-smokers so as to satisfy the requirements of Rule 23(a)(3) and (4).

### CONCLUSION

In sum, the Court finds that individual determinations would likely predominate in these enormously large number of cases, thereby defeating the purpose of a class action in maintaining judicial economy. Plaintiffs have failed to satisfy the prerequisites for class certification under Rule 23(a) and have also failed to satisfy the predominance, superiority and manageability requirements of Rule 23(b)(3).

IT IS THEREFORE ORDERED that the *Motions for Class Certification in each of these cases* are denied.