ESTATE OF Mary L. MAHONEY,
et al., Plaintiffs,

v.

R.J. REYNOLDS TOBACCO
CO., et al., Defendants.

Estate of Allen A. Davis, et al., Plaintiffs,

v.

R.J. Reynolds Tobacco Co.,
et al., Defendants.

No. 4:97–CV–10461, 4:97–CV–10753.

United States District Court,
S.D. Iowa,
Central Division.

Oct. 15, 2001.

Glenn L. Norris, Hawkins & Norris, Des Moines, IA, Steven P. Wandro, Wandro & Associates PC, Des Moines, IA, E. Ralph Walker, Walker Law Firm, Des Moines, IA, Norwood S. Wilner, Spohrer Wilner Maxwell Maciejewski Stanford & Matthews, Jacksonville, FL, for plaintiffs.

Steven L. Nelson, David A. Tank, Kristy Holub Smith, Davis Brown Koehn Shors & Roberts PC, Des Moines, IA, Vincent T. Chang, Daniel F. Kolb, Davis Polk & Wardwell, New York City, Roger T. Stetson, Edward M. Mansfield, Belin Lamson McCormick Zumback & Flynn PC, Des Moines, IA, Anthony J. Anscombe, Sedgwick Detert Moran & Arnold, Chicago, IL, P. Beach Kuhl, W. Bruce Wold, Sedgwick Detert Moran & Arnold, San Francisco, CA, Thomas A. Finley, Finley Alt Smith Scharnberg Craig Hilmes & Gaffney PC, Des Moines, IA, John J. Kenney, Ronald M. Neumann, John J. Roesser, Mary Elizabeth McGarry, Jill Owens, Simpson Thacher & Bartlett, New York City, David L. Brown, John A. McClintock, Chester C. Woodburn, III, Hansen McClintock & Riley, Des Moines, IA, John Nyhan, Jay Henneberry, Chadbourne & Parke LLP, Los Angeles, CA, Robert A. Van Vooren, Thomas D. Waterman, Lane & Waterman, Davenport, IA, Timothy E. Congrove, Craig E. Gustafson, Shook Hardy Bacon, Kansas City, MO, Robert C. Heim, Joseph Patrick Archie, Louise E. Moyer, Dechert Price & Rhoads, Philadelphia, PA, Richard R. Chabot, Sullivan & Ward, PC, Des Moines, IA, James G.

Sawtelle, Duncan Green Brown Langeness, Des Moines, IA, Mark W. Thomas, Henry A. Harmon, Grefe & Sidney PLC, Des Moines, IA, for defendants.

## ORDER

LONGSTAFF, Chief Judge.

The Court has before it plaintiffs' motion for class certification, filed April 2, 2001. Certain defendants [1] filed their resistance memorandum on May 21, 2001, and plaintiffs filed their reply memorandum on June 7, 2001. The Court held a hearing on June 21, 2001 and the motion is fully submitted.

## I. BACKGROUND

The named plaintiffs ("plaintiffs") and members of the proposed Class are individuals or representatives of individuals who smoked cigarettes designed, manufactured, marketed and sold by the defendant cigarette companies ("defendants") for more than twenty pack-years [2] who now suffer or have died from lung cancer. In their Second Amended Complaint, ("Complaint"), plaintiffs allege causes of action based on strict liability; negligence (both in terms of design defect and failure to warn); fraudulent concealment or nondisclosure; civil conspiracy; breach of express warranty; breach of special assumed duty and fraudulent misrepresentation. Plaintiffs do not seek class certification of the latter three claims, however. [3]

Plaintiffs propose to certify the following Class:

All persons residing in the state of Iowa, or who were residents of the state of Iowa at the time of their deaths, who have at least a 20 pack-year history of smoking Defendants' cigarettes and who, individually or through an estate or other legal representative, had a timely claim as of June 20, 1997 for personal injury damages or wrongful death arising from cancer of the lung. A pack-year is one package of cigarettes consumed per day per year.

Defendants resist certification, arguing the issues involved in plaintiffs' case turn on individualized proof, including causation, reliance, comparative fault, statute of limitations and damages.

## II. APPLICABLE LAW AND DISCUSSION

### A. Law Governing Class Certification

■ Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Procedure. The relevant portion of Rule 23(a) states as follows:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Plaintiffs bear the burden of establishing that each prerequisite of Rule 23(a) is satisfied. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Assuming all of the requirements of Rule 23(a) are met, plaintiffs seeking to proceed on behalf of a class must also satisfy one or more of the conditions set forth under Rule 23(b). Fed.R.Civ.P. 23(b); *see also Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct.

---

**1.** The term, "certain defendants," refers to Philip Morris Inc. and Philip Morris Cos., Inc; R.J. Reynolds Tobacco Co.; Brown & Williamson Tobacco Corp.; British–American Tobacco Co., Ltd.; Lorillard Tobacco Co. and Lorillard Inc.; and U.S. Smokeless Tobacco Co. (formerly United States Tobacco Co.). Although defendants Ligget & Myers, Inc., Liggett Group, Inc., and The Brooke Group Holding Company Inc, formerly known as Brook Group, Limited (collectively, "the Liggett defendants") were not a party to the May 21, 2001 filing, the Liggett defendants have filed a joinder to certain defendants' memorandum, and participated in the June 21, 2001 hearing. This Order therefore applies to all defendants with equal force and effect.

**2.** A pack-year is defined as one package of cigarettes smoked per day per year. *See* Plaintiffs' Memorandum in Support of Motion for Class Certification ("Plaintiffs' Memorandum") at 2.

**3.** *See* Complaint ¶¶ 5.1–12.14; Plaintiffs' Memorandum at 1 n. 3.

2231, 138 L.Ed.2d 689 (1997) (citing Rule 23(b)). In the present case, plaintiffs seek to certify the Class under Rule 23(b)(3), which requires a finding that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

In evaluating a motion to certify a class, this Court must accept as true all of the allegations set forth in the Complaint. *See, e.g., Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978); *Thompson v. American Tobacco Co., Inc.,* 189 F.R.D. 544, 549 (D.Minn.1999). "Although the strength of a plaintiff's claim should not affect the certification decision, a district court 'certainly may look past the pleadings to determine whether the requirements of Rule 23 have been met.'" *Thompson,* 189 F.R.D. at 549 (quoting *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996)).

### B. Requirements of Rule 23(a)

#### 1. Numerosity

■ As set forth above, Rule 23(a)(1) requires that the "class be so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Various factors are relevant in analyzing "numerosity," such as the number of individuals in the proposed class, the nature of the action, the value of the individual claims and the inconvenience of trying each case individually. *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 559 (8th Cir.1982). The Eighth Circuit has not established strict requirements regarding the size of a proposed class, however. *See, e.g., Emanuel v. Marsh,* 828 F.2d 438, 444 (8th Cir. 1987); *Boyd v. Ozark Air Lines, Inc.,* 568 F.2d 50, 54 (8th Cir.1977).

■ In the present case, plaintiffs are unable to pinpoint the actual number of Class members, but estimate the number to be in the thousands.[4] Defendants do not contest

the fact that joinder of all potential Class members would be impracticable. The Court therefore finds the "numerosity" requirement is satisfied.

#### 2. Commonality

■ Rule 23(a)(2) also requires the presence of common issues of law and fact. Fed. R.Civ.P. 23(a)(2). To establish "commonality" for purposes of this subsection, it is not necessary to demonstrate *every* question of law or fact is common to each member of the class. *Paxton,* 688 F.2d at 561. Rather, the issues linking the class members must be "substantially related" to resolution of the case. *Id.; see also DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir.1995) (quoting *Paxton* ).

■ Plaintiffs have alleged several legal and factual issues they contend are common to all potential Class members. *See* Plaintiffs' Memorandum in Support of Motion for Class Certification at 16–18. Principal among these issues are: 1) whether cigarette smoking causes lung cancer; 2) whether defendants' cigarettes were defectively designed; 3) whether defendants negligently designed, manufactured, warned, failed to warn and/or marketed their cigarettes; 4) whether defendants conspired to sell defectively designed cigarettes and/or to conceal their knowledge of the health risks of smoking; and 5) whether defendants are liable to plaintiffs and the class for punitive damages.

Without conceding the commonality requirement under Rule 24(a)(2), defendants argue that any common questions that may exist do not predominate over the individual issues, as required under Rule 23(b)(3). *See Amchem,* 521 U.S. at 609, 117 S.Ct. 2231 (commonality requirement under Rule 23(a)(2) "is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions."). For purposes of this motion, this Court therefore will assume the commonality requirement under Rule 23(a)(2) is satisfied, and will address the predominance requirement below.

---

4. The fact that representative plaintiffs "lack [ ] knowledge of the exact number of persons" in the class should not prevent certification. *NAS-*

*DAQ Market–Makers Antitrust Litigation,* 169 F.R.D. 493, 509 (S.D.N.Y.1996) (internal citation omitted).

### 3. Typicality

In addition to the numerosity and commonality requirements, Rule 23(a) also requires a showing that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "Typicality" under Rule 23(a)(3) suggests " 'there are other members of the class who have the same or similar grievances as the [representative] plaintiff.' " *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir.1990) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir.1977)). Generally, the typicality requirement is satisfied if the claims of all members arise from a single event or share the same legal theory. *Paxton*, 688 F.2d at 561–62. If the legal theories of the representative plaintiffs are the same or similar to those of the class, slight differences in fact will not defeat certification. *See De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983); *see also Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir.1996) (slight factual differences will not prevent class certification if "the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory").

Plaintiffs contend Ms. Mahoney's and Mr. Davis' claims are typical of the claims of proposed Class members based on the fact all are 20 pack-year smokers of cigarettes manufactured and sold by defendants, and all suffer or have died from lung cancer. Complaint ¶¶ 1.22, 1.23, 2.1, 3.1, 4.13. They also argue that the claims of the representative plaintiffs and all Class members arise out of the same course of "wrongful and fraudulent conduct," such as the designing, marketing and selling of defective cigarettes. Complaint ¶¶ 1.22, 1.23, 2.1, 2.7, 4.2, 4.4, 4.9, 5.1–6.6, 11.1–12.14. Accordingly, because the representative plaintiffs and all proposed Class members have been injured by the same product, and raise claims based on the same legal and remedial theories, "some" factual variations in the smoking patterns, brands of cigarettes smoked and amounts of damages should not destroy typicality.

This Court does not agree. The United States Supreme Court has held that the commonality and typicality requirements "tend to merge," acting as "guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon v. General Tel. Co.*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In situations where claims *turn* on individual facts, no economy is achieved, and the typicality requirement cannot be met. *Guillory v. American Tobacco Co.*, No. 97 C. 8641, 2001 WL 290603 at *5 (N.D.Ill. Mar.20, 2001) (no typicality found where plaintiffs' claims are neither consistent with each other nor "sufficiently typical of the class").

For example, as in *Guillory*, plaintiffs in the present case contend defendants caused their lung cancer by purposely concealing information that nicotine is highly addictive, and that smoking cigarettes causes adverse health consequences including cancer. *See* Complaint ¶¶ 11.3–4 (fraudulent nondisclosure); 12.5 (civil conspiracy); *see also Guillory*, 2001 WL 290603 at *5. To prove this claim, plaintiffs must show a causal connection between defendants' conduct and plaintiffs damages, "namely that each defendants' deceptive advertising [and/or nondisclosures] caused each class member to smoke." *Id.; see also Spaur v. Owens–Corning Fiberglas Corp.*, 510 N.W.2d 854, 858 (Iowa 1994) (setting forth Iowa law on proximate causation). Such proof can only come from a case-by-case analysis of each Class member's exposure to defendants' advertising and other industry propaganda.

Furthermore, there is evidence in the record that the decedents of both representative plaintiffs may have started smoking and continued to smoke even if full disclosures had been made. Mary Mahoney and Allen Davis admitted in deposition they were warned against smoking by their personal physicians, but chose to ignore those warnings. *See* Deposition of Mary 1. Mahoney ("Mahoney Dep.") at 121 (Defs.Exh. 33) (testifying that her physician "was very much against smoking, and if I wasn't so bullheaded, I would

have been too; but I'm just hardheaded"); Deposition of Allen A. Davis ("Davis Dep.") at 222–33 (Defs.Ex. 32) (stating he "didn't like the doctors hollering at him about how much he smoked"). In fact, in order to be allowed to smoke during one particular hospital stay, Mr. Davis signed a formal release acknowledging that he "freely, voluntarily, and knowingly chose to smoke," understanding that "smoking [was] dangerous to [his] health in many significant ways, including ... cancer." Release Form dated March 17, 1990, (Davis Dep. Exh. 12).

While some potential Class members may have shared Ms. Mahoney's and Mr. Davis' attitudes toward smoking, it can hardly be said their attitudes are "typical" of all Class members-especially those who truly wanted to quit but could not.[5] One of plaintiffs' experts, Adam Jaffe, Ph.D., stated in deposition that he could not identify which particular Class members would have "changed their behavior" if defendants had not committed the alleged fraudulent and/or conspiratorial acts, admitting that consumers act differently when exposed to the same information. Deposition of Adam B. Jaffe, Ph.D. at 58–59, 87–88 (Pls.Exh. 10). Another of plaintiffs' experts explained that in order to fully evaluate a particular smoker's choices, he would need such information as:

> what influences existed in the person's life, the people around that person who were or were not smoking, the age at which the person began smoking, the nature of the culture with respect to smoking, the information that the person had with respect to the risks of smoking and the benefits of smoking, including the risk of addiction, the information that the smoker had regarding the relative riskiness of the product that he or she actually began to smoke. I'd want to know the extent to which the person understood the conduct of the industry that influenced the culture that in-

fluenced the peer group and the family that influenced the advertising, influenced the regulation of cigarettes ....

Deposition of Jon D. Hanson, J.D. at 232–33 (Pls.Exh. 13). As in *Guillory*, this Court finds that "the differences among the plaintiffs and the proposed class members are not merely factual differences regarding the circumstances of how their claims initiated-they impact the very legal theories on which the class can proceed."[6] *Guillory*, 2001 WL 290603 at *5. The Court therefore concludes the typicality requirement has not been satisfied.

### 4. Adequacy of Representation

■ "The focus of Rule 23(a)(4), the adequacy of representation requirement, is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562–63. Clearly, the former criterion is satisfied in the present case: like all members of the proposed Class, Ms. Mahoney and Mr. Davis were twenty pack-year smokers who alleged they contracted lung cancer caused by defendants' cigarettes and deceptive advertising campaigns.

The second criterion likewise is satisfied. Despite the presence of many individual issues, there is no evidence the named plaintiffs will pursue the litigation "at the expense of other class members or will, in any other way, be antagonistic to the class interests." *Id.* at 563; *see also Arch v. American Tobacco Co.*, 175 F.R.D. 469, 479–80 (E.D.Pa.1997) (if representatives' prosecute claims in such a way as to jeopardize class members' claims, named representatives' interests would be considered "antagonistic" to those of class). The Court has no concern about the abilities of plaintiffs' counsel to manage and prosecute this complex litigation. *See Paxton*, 688 F.2d

---

5. The Court acknowledges plaintiffs have not made a claim for separate damages based on addiction. Because plaintiffs allege defendants purposely misrepresented the addictive properties of nicotine, however, *see, e.g.*, Complaint at ¶¶ 11.2–11.3, addiction undoubtedly will prove relevant to several different aspects of plaintiffs' case.

6. *See also Clay v. American Tobacco Co.*, 188 F.R.D. 483, 490 (S.D.Ill.1999) (noting the typicality requirement has limitations, "particularly when the claimed injury is tied to a complex course of conduct engaged in by the defendants over a long period of time, as opposed to a single act to which all class members have been exposed equally").

at 563. The Court therefore concludes plaintiffs have satisfied the adequacy of representation requirement.

### C. Rule 23(b)(3)-Predominance Test

[10] Even assuming plaintiffs had not failed to meet one of the prerequisites set forth under Rule 23(a), the Court finds they also are unable to prove that common issues predominate over individual issues, as required under Rule 23(b)(3).[7] As argued by defendants, several of plaintiffs' claims—including negligence, fraudulent nondisclosure and civil conspiracy—contain elements that turn on facts unique to each plaintiff. These elements are discussed below.

#### 1. Injury–In–Fact

One of the first steps in prosecuting plaintiffs' case is to establish which individuals fall within the proposed Class. As set forth above, plaintiffs' class definition includes those individuals who suffer from or have died from lung cancer. *See* Complaint ¶ 3.1. Determining whether a proposed Class member meets this criterion demands a highly individualized inquiry.[8]

Defendants have presented evidence that many cancerous tumors found in the lung are not lung cancer, but rather, secondary cancers that have metastasized from elsewhere in the body.[9] In fact, plaintiffs' expert Allan Feingold, M.D. testified in previous litigation that "if a cancer which originates elsewhere metastasizes at all, the likelihood is about 50 percent that it will metastasize to the lung." Allan A. Feingold, M.D., *Henley* Trial at 1063 (Defs.Exh. 26); *see also* Affidavit of David H. Goldstein at 2 (Defs.Exh. 1) ("The lung is a common site of metastases from other sites and distinguishing a primary from metastatic cancer in the lung may be difficult and sometimes impossible."). For this reason, many individuals who smoke and develop lung conditions are misdiagnosed with lung cancer.[10]

Plaintiffs propose to resolve this dilemma through a post-trial "administrative procedure" conducted without participation of defendants and limited to a review of medical records. *See* Plaintiffs' Memorandum in Support of Motion for Class Certification ("Plaintiffs' Memorandum") at 36–37. It is not clear who the decisionmaker would be; plaintiffs indicate only that the precise methodology will be handled by Class Counsel with input from the Court. *Id.* at 36–37. This Court agrees with defendants that such a procedure in effect usurps defendants' ability to challenge an essential element of each proposed members' claim, injury-in-fact, and

7. Significantly: "All of the federal courts that have considered whether to certify smokers' lawsuits have found that individual issues predominate over any possible common issues and preclude certification." *Chamberlain v. American Tobacco Co.*, 70 F.Supp.2d 788 (N.D.Ohio 1999). *See also Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir.1998); *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir.1996); *Badillo v. American Tobacco Co.*, 202 F.R.D. 261 (D.Nev. 2001); *Guillory v. American Tobacco Co.*, No. 97 C 8641, 2001 WL 290603 (N.D.Ill. Mar. 20), *petition for interlocutory appeal denied*, No. 01–8008, slip op. (7th Cir. April 11, 2001); *Aksamit v. Brown & Williamson Tobacco Corp.*, No. 6:97–3636–24, 2000 U.S. Dist. LEXIS 1880 (D.S.C. Dec. 29, 2000); *Walls v. American Tobacco Co.*, No. 97–CV–0218–H, 2000 U.S. Dist. LEXIS (N.D.Okla. Oct. 19, 2000); *Thompson v. American Tobacco Co., Inc.*, 189 F.R.D. 544 (D.Minn. 1999); *Clay v. American Tobacco Co.*, 188 F.R.D. 483 (S.D.Ill.1999); *Hansen v. American Tobacco Co.*, No. LR–C–96–881, slip op. (E.D.Ark. July 21, 1999); *Insolia v. Philip Morris Inc.*, 186 F.R.D. 535 (W.D.Wis.1998); *Emig v. American Tobacco Co.*, 184 F.R.D. 379 (D.Kan.1998); *Barreras Ruiz v. American Tobacco Co.*, 180 F.R.D. 194 (D.P.R. 1998); *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90 (W.D.Mo.1997).

8. Plaintiffs may choose to characterize this issue as an element of their negligence claim. As noted by the court in *Insolia*, however: "It makes no difference whether these issues are part of the definition of a proposed class or part of the merits of the claims raised in a complaint." *Insolia v. Philip Morris Inc.*, 186 F.R.D. 547, 547 (W.D.Wis.1999).

9. Plaintiffs' expert Feingold stated in previous litigation that a cancer that has metastasized from elsewhere in the body is not "lung cancer" at all, but metastatic disease. Allan A. Feingold, M.D., *Henley* Trial at 1063 (Defs.Exh. 26).

10. Defendants' expert George Hensley, M.D. states that the "non-agreement between clinical and autopsy diagnoses ranges from 35 to 45 %." *See* Expert Witness Affidavit of George Hensley, M.D. at 2–3 (Defs.Exh. 17). Although plaintiffs dispute the accuracy of these figures, they do not dispute that misdiagnoses occur.

is therefore unacceptable. Whether a potential litigant suffers from lung cancer must be evaluated on a case-by-case basis.

### 2. Causation

Causation is another area in which individualized inquiries will prove critical. Assuming a plaintiff can establish he developed a primary lung cancer, the fact he may also have engaged in a twenty pack-year smoking history does not alone establish proximate causation.

To establish proximate cause under Iowa law [11] a plaintiff must prove her injury would not have occurred "but for" defendants' conduct, and that defendants' conduct was a substantial factor in producing the injury. *See Spaur v. Owens–Corning Fiberglas Corp.*, 510 N.W.2d 854, 858 (Iowa 1994). No one seriously doubts the general premise that smoking causes lung cancer. Nevertheless, to establish the first prong of the *Spaur* test, a plaintiff must necessarily eliminate all *other* risk factors as possible causes of *his* lung cancer.

Defendants have produced evidence that the types of primary lung cancer found in smokers all can be caused by risk factors other than smoking. David M. Burns M.D. *Horton* Trial at 441–42 (Defs.Exh. 27). These factors include: exposures to radon, asbestos, radiation and air pollution; occupational exposures to arsenic or nickel; genetics; alcohol consumption; marijuana use;

and prior lung injury.[12] In short, if a plaintiff cannot prove that "but for" defendants' conduct she would not have developed lung cancer, she cannot establish proximate causation. *Spaur*, 510 N.W.2d at 858.[13]

In addition to medical causation, defendants contend a plaintiff must establish the "conduct" part of causation, *i.e.* that defendants acted in such a way as to cause the plaintiff to start smoking and continue smoking for twenty pack-years. *See* Certain Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification ("Defendants' Memorandum") at 30–32. The Court is hesitant to recognize what defendants classify as "conduct causation" as an independent form of proximate causation.[14] It does agree, however, that such issues as why a particular plaintiff smoked cigarettes despite highly publicized warnings are an integral part of the "but for" test. As explained by the court in *Clay:* "What influenced a particular individual to start smoking inevitably varies from person to person. The depositions of the named plaintiffs exemplify this best. Each testified that he or she started smoking for different reasons, none of which included the defendants' misconduct as a factor." *Clay*, 188 F.R.D. at 503.

### 3. Reliance

Count VII of plaintiffs' Second Amended Complaint sets forth a cause of action for fraudulent nondisclosure.[15] Under Iowa law,

---

**11.** The Court acknowledges choice of law issues are present, however, does not believe a choice of law decision is necessary to determine whether individual issues predominate. *See, e.g., In re Synthroid Marketing Litig.*, 188 F.R.D. 295, 302 (N.D.Ill.1999) (court found it was speculative prior to class certification whether application of other states' laws would be necessary); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 58 (S.D.N.Y.1993) (speculative whether choice of law issues would render class unduly burdensome and unmanageable).

**12.** *See* 1989 Surgeon General's Report at 53–53 (Defs.Exh. 85); Goldstein Aff. at 2 (Defs.Exh. 1); Hensley Aff. at 3 (Defs.Exh. 17); Burns *Reed* Dep. at 163–69 (Defs.Exh. 28); Davis *State of Washington* Dep. at 67 (Defs.Exh. 30); Roggli Dep. at 136–39, 141–46, 193–94 (Pls.Exh. 12).

**13.** In their reply memorandum, plaintiffs argue that because "every reputable scientific and medical organization in the country ... recognize

that cigarette smoking causes lung cancer," the parties need not conduct individualized inquiries into each class members' smoking patterns. Plaintiffs' Reply to Certain Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Plaintiffs Reply") at 6. This argument ignores the possibility, however remote, that a plaintiff's lung cancer was caused by factors *other* than cigarette smoking.

**14.** There is no doubt, however, that these issues will be addressed in conjunction with defendants' affirmative defenses of assumption of the risk and comparative fault.

**15.** Plaintiffs have also pled a cause of action for fraudulent misrepresentation, *see* Complaint Count VI, but do not seek class certification of this claim.

this claim depends upon a showing of reliance. *See Cornell v. Wunschel,* 408 N.W.2d 369, 374 (Iowa 1987).

Plaintiffs dispute that reliance must be shown on an individual basis. According to plaintiffs, reliance should be assumed if plaintiffs can show the omissions or nondisclosures were material, coupled with generalized proof that plaintiffs continued smoking. In the context of securities fraud, the United States Supreme Court has recognized:

> Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of his decision. This obligation to disclose and this withholding of a material fact establish the requisite of causation in fact.

*Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) (internal citations omitted); *see also Trimble v. American Savings Life Ins. Co.,* 152 Ariz. 548, 733 P.2d 1131, 1136 (1986) ("Proof of each plaintiff's reliance on the misrepresentations or omissions is not a prerequisite to recovery ... [I]f omissions or nondisclosures meet the standards of materiality to a reasonable investor, causation and reliance can be assumed.") (internal citation omitted). In addition to securities cases, courts also have allowed reliance to be inferred or assumed in common law fraud situations. *See, e.g., Cullen v. Whitman Medical Corp.,* 188 F.R.D. 226 (E.D.Pa.1999) (excusing plaintiffs from proving individual reliance or causation on claim that sham vocational school defrauded students); *Sargent County Bank v. Wentworth,* 500 N.W.2d 862, 875 (N.D.1993) (no individual reliance need be proven in claim that bank committed fraud in renewal of bank note).

Underlying the above line of reasoning is the premise that it would be difficult, if not impossible, to show what a plaintiff would have done had he been given access to the omitted or nondisclosed facts. *See, e.g., Edens v. Goodyear Tire & Rubber Co.,* 858 F.2d 198, 206 (4th Cir.1988) (in action alleging breach of franchise agreement based on fraudulent conduct, court held: "Direct proof of reliance on the concealment [is] not required for it [is] practically impossible to prove, by direct evidence, reliance on that which [has] been intentionally concealed."); *Sollenbarger v. Mountain States Tel. & Tel. Co.,* 121 F.R.D. 417, 434 (D.N.M.1988) (in action alleging fraudulent inducement of a contract, court reasoned: "[A]n inference of reliance is logical in an omission of material facts situation because of the difficulty in proving what the party would have done if it had had the relevant information."). In the present case, however, defendants claim it *is* possible "to show what a plaintiff would have done" if defendants had disclosed the health risks of smoking at an earlier date or in a more thorough fashion. *Edens,* 858 F.2d at 206. Defendants have presented strong evidence to suggest both named plaintiffs did *not* rely on defendants' allegedly fraudulent statements, and would not have stopped smoking regardless of the warning given. *See* Davis Dep. Exhs. 11–12 (asserting he lived in a "free country," and in order to be allowed to smoke in hospital room, signed release acknowledging he knew dangers of smoking, including risk of cancer, but desired to smoke anyway); Mahoney Dep. at 146–47, 191 (stating there was no warning she could have been given that would have made her quit smoking). Allowing a generalized assumption of reliance in the face of this evidence would deprive the tobacco companies of a strong defense.

It is likely for this reason that courts evaluating smokers' claims for fraud against tobacco companies have uniformly required individual proof of reliance. *See Castano v. American Tobacco Co.,* 84 F.3d 734, 745 (5th Cir.1996); *Taylor v. American Tobacco Co.,* No. 97 715975 NP, slip op. (Mich.Cir.Ct. Jan. 10, 2000) (Defs.Exh. 57); *Reed v. Philip Morris Inc.,* No. 96–5070, slip op. (D.C.Super.Ct. July 23, 1999) (Defs.Exh. 56). As explained by the court in *Taylor:*

> A general finding that defendants had made misleading statements of fact about the health risks of cigarettes would not be controlling, moreover, since the plaintiffs would still have to show individual reliance on these misleading statements.... Ciga-

rettes have borne the Surgeon General's warning for decades. The media have been filled with descriptions of the dangers of smoking. It seems that questions would abound regarding plaintiffs' detrimental reliance on any statements of the defendants.

*Taylor,* No. 97 715975 NP, slip op. at 16–17. This Court agrees with the *Castano, Taylor,* and *Reed* courts and concludes that based on evidence Ms. Mahoney, Mr Davis and undoubtedly many more proposed Class members may not have quit smoking even if defendants had disclosed the true health risks of smoking at an earlier date, proof of reliance must be shown on an individualized basis.

### 4. Affirmative defenses

Defendants also raise a number of affirmative defenses to plaintiffs' claims, including comparative fault and assumption of the risk. *See* Iowa Code §§ 668.1–668.3 (setting forth comparative fault as an affirmative defense to a negligence claim, and assumption of the risk as an affirmative defense to strict liability). Plaintiffs assert there is no need for individualized proof on these issues, because "[p]laintiffs and all Class members were affected by Defendants' wrongful and conspiratorial conduct in the *same* way." Plaintiffs' Memorandum at 25.

This Court does not agree. Plaintiffs' own experts concede that regardless of how "pervasive" defendants' advertising campaign may have been, consumers react differently to the same information. *See* Jaffe Dep. at 58–59, 87–88 (Pls.Exh. 10). There is evidence many people-including plaintiffs' named representatives-would continue to smoke "no matter what warning they've been given or no matter even when they're experiencing lung cancer in others." *See* Dep. of Paul Slovic, Ph.D. at 137 (Pls.Exh. 14); *see also* discussion under section II(C)(3), *supra.* In order to evaluate why a person would continue to smoke under these circumstances, experts on both sides must consider issues unique to each smoker, such as influences from close friends and family members, information and/or propaganda regarding smoking to which the individual may have been exposed, addiction, etc. Dep. of Jon D.

Hanson at 232–33 (Pls.Exh. 13). *See also Guillory,* 2001 WL 290603 at *9. As explained by the *Guillory* court:

It is impossible to determine such facts without mandating an individual inquiry into the specifics of each plaintiff's circumstances. Indeed, if defendants were not able to individually probe into the peculiarities of each class member's case, the result would be that they would be denied the opportunity to prepare a defense.

*Id.*

Defendants also have raised a potential statute of limitations defense. Under Iowa law, a statute of limitations " 'begins to run when the person gains knowledge sufficient to put him on inquiry.' " *Roth v. G.D. Searle & Co.,* 27 F.3d 1303, 1306 (8th Cir.1994) (quoting *Sparks v. Metalcraft, Inc.,* 408 N.W.2d 347, 351 (Iowa 1987)). "Actual knowledge of one's injury or claim is not required." *Id.*

Plaintiffs do not dispute that Iowa courts have adopted inquiry notice, but argue that "[a] person cannot learn that he has been injured or be on any kind of inquiry notice until he has been diagnosed with lung cancer." Plaintiffs' Reply Memorandum at 12. Accordingly, because the class definition requires a timely claim as of June 20, 1997, any smoker with lung cancer that is diagnosed as of June 20, 1995 or thereafter is timely. *Id.* at 12–13.

Plaintiffs' argument assumes one is not on inquiry notice after developing *symptoms* of a disease but before being formally diagnosed. This assumption is contrary to Iowa law. As stated in *Roth,* it is not necessary to have knowledge of one's *actual injury* as long as other facts are present that are sufficient to prompt a further investigation. *Roth,* 27 F.3d at 1306; *see also Kline v. McGuire,* No. 99–1534, 2000 WL 1827215 (Iowa Ct.App. Dec.13, 2000) ("We understand *McClendon* to require us to hold knowledge of mere symptoms, such as depression and personality change, is knowledge of 'a problem' sufficient to put the plaintiff on inquiry notice.") (citing *McClendon v. Beck,* 569 N.W.2d 382, 386 (Iowa 1997)). Just as individual evaluations are necessary to determine whether a potential Class member has a

primary lung cancer, individual evaluations are critical to determine when a person was placed on inquiry notice that he may have lung cancer.

#### 5. Civil Conspiracy

Plaintiffs have also alleged a cause of action for civil conspiracy. Under Iowa law, civil conspiracy is not actionable in and of itself, but depends on the presence of an underlying tort. *See Robert's River Rides, Inc. v. Steamboat Dev. Corp.,* 520 N.W.2d 294, 302 (Iowa 1994) (quoting *Basic Chems. Inc. v. Benson,* 251 N.W.2d 220, 233 (Iowa 1977)) (" 'Civil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy which give rise to the actions.' ").

In the present case, plaintiffs' claim of civil conspiracy is based underlying charges which include both fraudulent concealment or non-disclosure and fraudulent misrepresentation. *See* Complaint at ¶¶ 12.5–12.14. Because reliance is a principal element of both of these claims under Iowa law, *see, e.g., IBP, Inc. v. FDL Foods, Inc.,* 19 F.Supp.2d 944, 949 (N.D.Iowa 1998), plaintiffs' claim of civil conspiracy also will depend on numerous individual issues.

#### 6. Damages

It is axiomatic that an award for personal injury damages can be made only by considering issues *personal* to the individual involved. *See,* Iowa Civil Jury Instruction 200.1 (personal injury damages "cannot be measured by any exact or mathematical standard;" Iowa Civil Jury Instructions 200.2–200.13 (setting forth actual elements of damages)). Plaintiffs seek to circumvent individual evaluations by arguing that the economic cost of lung cancer can be calculated on an aggregate basis and divided amongst the Class members. *See* Plaintiffs' Memorandum at 29–30. This Court is not convinced.

Iowa law is clear that absent mutual agreement of the parties, personal injury damages must be determined from the facts of each case. *See Cowan v. Flannery,* 461 N.W.2d 155, 158 (Iowa 1990) ("The amount awarded for personal injury and the resulting pain and suffering cannot be determined from evidence of value, there is no market value on such items. The facts of each case determine the value to be placed on such elements of damages."). At least one state court ruling on a motion to certify the class in a tobacco action has expressly rejected the "aggregate damage" approach, noting that the degree to which a smoker has been injured will necessarily vary with each individual. *Arch v. American Tobacco Co.,* 175 F.R.D. 469, 493 (E.D.Pa.1997).[16] This Court concludes that compensatory damages must be determined on a case-by-case basis.[17]

#### 7. Superiority

■ In addition to establishing predominance, Rule 23(b)(3) also requires proof that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed R. Civ. P. 23(b)(3). Four non-exclusive factors are relevant in making this determination:

---

**16.** *But see Hilao v. Estate of Marcos,* 103 F.3d 767, 786 (9th Cir.1996) (in class action challenging human-rights abuses, torture and summary executions in the Phillipines under Ferdinand Marcos, Ninth Circuit approved use of random sampling and inferential statistics to determine appropriate damages). As noted by a Pennsylvania federal court in evaluating certification of a proposed tobacco class action, however: "Unlike *Hilao,* defendants in this case do not waive any challenge to the computation of damages.... The 'degree of injury which each and every class member suffered would clearly be relevant to the computation of damages and would necessarily entail an individual inquiry.' " *Arch v. American Tobacco Co.,* 175 F.R.D. 469, 493 (E.D.Pa.1997).

**17.** Granted, the fact the calculation of compensatory damages raises individual issues does not alone prevent certification of the Class. The trial could be bifurcated between a liability phase and damages phase to ensure greater manageability. Furthermore, the Court agrees with plaintiffs that any punitive damages awarded could be determined in the aggregate. The jury instructions during the damages phase of the litigation could be tailored to ensure the punitive damages bore a "reasonable relationship" to compensatory damages awarded, *see, e.g., BMW of North Am., Inc. v. Gore,* 517 U.S. 559, 580, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Because damages are only one of many claims and defenses which raise individual issues, however, the method for computing damages will not change the ultimate decision to deny certification of the Class. The Court continues to believe that the requirements of Rules 23(a)(3) and 23(b)(3) are not satisfied.

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability and undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

*Id.* In the present case, although the Court believes plaintiffs' counsel would minimize the individual issues whenever possible, and would attempt to prevent an individual or group of Class members from dominating the litigation, it nevertheless believes a class action of this nature is not superior to individual actions.

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996). Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy. As reasoned by the court in *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 94 (W.D.Mo.1997), "a class action in this case will create judicial *dis* economy." (Emphasis in orig.).

## III. CONCLUSION

Accordingly, the Court finds plaintiffs have failed to fulfill two prerequisites to class certification, namely, the typicality requirement under Rule 23(a)(3) and the predominance requirement under Rule 23(b)(3). Plaintiffs' motion to certify the class is denied. All statutes of limitations periods are tolled for ninety (90) days from the date of this Order to enable individuals or estates of individuals meeting the criteria set forth in plaintiffs' proposed class definition to file separate complaints in the appropriate federal or state district court.

IT IS SO ORDERED.