In re TEFLON PRODUCTS LIABILITY LITIGATION.

This Document Relates to All Actions.

MDL No. 1733.
Civil No. 4–06–md–01733.

United States District Court,
S.D. Iowa,
Central Division.

Dec. 5, 2008.

ORDER

RONALD E. LONGSTAFF, Senior District Judge.

The Court has before it plaintiffs' motion for class certification, filed August 4, 2008. Defendant E.I. DuPont De Nemours & Company ("DuPont") resisted the motion on September 2, 2008, and plaintiffs filed a reply memorandum on October 6, 2008. The Court held a hearing on October 14 and 15, 2008, and the motion is fully submitted.[1]

## I. BACKGROUND

In the present MDL proceeding, plaintiffs seek certification of twenty-three classes of persons who acquired cookware coated with DuPont's "Teflon®" product.[2] Plaintiffs allege that in producing and marketing its Teflon® and unbranded, non-stick cookware coatings ("NSCC"), DuPont made false, misleading and deceptive representations regarding the safety of its product. They also claim that DuPont knew or should have known about potential risks attendant in using cookware containing its coating, and failed to disclose this information to consumers.[3]

---

1. With permission from the Court, both parties also filed post-hearing memoranda and exhibits on November 4, 2008.

2. On February 21, 2006, the Judicial Panel of Multidistrict Litigation transferred the first thirteen of these cases to this Court for coordinated or consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1407. The remaining cases were transferred in subsequent orders.

3. DuPont has sold its NSCC products under a variety of brand names during the time periods at issue in this litigation, including Teflon®, Silverstone®, and Autograph®. DuPont also has sold its NSCC on an "unbranded" basis to cookware companies that do not want to pay a licens-

The following relevant facts are accepted as true as alleged in the Corrected Unified Class Action Complaint ("the Complaint"). *See, e.g., Bishop v. Comm. on Prof. Ethics,* 686 F.2d 1278, 1288 (8th Cir.1982) (in evaluating a motion for class certification, the court "accepts as true" the *substantive* facts as alleged in the complaint). Scientists in DuPont's Jackson Laboratory invented Teflon® in 1938. DuPont first began selling Teflon commercially in 1946, and the product became a popular component of cookware in the 1960s. To date, billions of cookware products coated with Teflon have been sold world-wide.

Various studies have shown that DuPont's NSCC can decompose at temperatures within the realm of "normal use," potentially releasing a synthetic chemical known as perfluorooctanoic acid ("PFOA").[4] Exposure to PFOA, which also is referred to as ammonium perfluorooctanoate ("APFO"), or ("C–8"), may cause a flu-like condition known as "polymer fume fever."

In addition, blood sample data obtained by the Environmental Protection Agency ("EPA") caused the Agency to conclude that PFOA has the ability to cross the human placenta, potentially leading to birth defects. In late 2005, in order to settle claims brought against it by the EPA under the Federal Toxic Substances Control Act, DuPont paid "the largest civil administrative penalty [the] EPA has ever obtained under any federal environmental statute." Complaint at ¶ 50.[5]

DuPont has been aware of potential health hazards from the use of NSCC since the 1950s or 1960s, but has represented to consumers that its product is completely safe. In fact, as of April 25, 2006, DuPont continued to represent on its website that Teflon® products are safe for their intended consumer use. DuPont has never disclosed the symptoms of polymer fume fever directly to consumers,[6] nor has it suggested to consumers that there are any potential health risks from the use of its NSCC.

It is important to note that none of the proposed class representatives alleges that he or she has been injured from the use of DuPont NSCC. Rather, in each of the purported class actions, plaintiffs seek recovery solely for economic damage, "whether in the form of damages, statutory remedies, injunctive or equitable relief, or rescission, as opposed to damages for physical injury." Plaintiff's Mem. at 2.

Plaintiffs now move to certify the following class definition, with appropriate state-specific modifications: [7]

> All persons who obtained ownership of cookware in State _____, within the State's applicable statute of limitations or repose of ____ years, and who fall within any of the following subclasses:
>
> Sub–Class 1. All purchasers of cookware containing DuPont branded non-stick coating labeled with the DuPont trade names known as Teflon®, Autograph®, or Silverstone®, and as to Silverstone® the purchase must have occurred prior to 2001,

---

ing fee to use the DuPont trademark. In all, DuPont sells its non-stick coatings to approximately 120 different houseware manufacturers. It is important to note that DuPont does not manufacturer cookware—only the coating used on other manufacturers' cookware.

Unless otherwise indicated, the term "NSCC" will refer to cookware coated with DuPont's product on both a branded and "unbranded" basis.

4. DuPont uses the fluoropolymer polytetrafluoroethylene ("PTFE") as a key ingredient in its non-stick coating, due to the fact other substances do not adhere to it. Perfluorooctanoic acid, ("PFOA"), in turn, is used as a processing aid in the production of PTFE. Plaintiffs allege that when PTFE decomposes at high heat, PFOA, among other things, is released.

5. Although not in the record, the Court notes this fine resulted from documented injuries caused by releases of PFOA into groundwater during the manufacturing process, not from the exposure to PFOA while cooking with NSCC at high temperatures.

6. DuPont disputes this statement, and referred during the hearing to a brochure—available upon consumer request—outlining the potential dangers of PFOA. Evidence of this brochure has not been made a part of the formal record, however.

7. This is the revised definition submitted during the hearing, and in plaintiffs' post-hearing submission.

and who continue to possess the cookware, cookware packaging, or other documentation of the cookware.

Sub–Class 2. All purchasers of brands, makes, product lines, and/or models of cookware containing DuPont nonstick coating, whether branded with DuPont tradenames or not, and who continue to possess the cookware. The following manufacturers' or distributors' brands, makes, product lines, and/or models of cookware meet these criteria during the following time frames:

> *Meyer Anolon*—at any time; *Meyer Circulon*—at any time; *Meyer Farberware Millenium*—at any time; *Bradshaw*—Good Cook Classic, Good Cook Kryolite, Good Cook Professional, Bialetti Fusion, Bialetti Scenic, Bialetti Americano, Bialetti Prema Cucina, Bialetti Leonardo, Bialetti Monaco, Bialetti Bella, Bialetti High Base, Bialetti Vogue, Oneida Grill Pan—at any time; *Eagleware*—at any time; *QVC*—at any time; *Pampered Chef*—at any time; *Nordicware Texas Skillet*—at any time; *All Clad*—at any time; *Megaware*—1988 to present, and any other manufacturers' or distributers' brands, makes, productlines and/or models of cookware admitted by DuPont to contain a DuPont nonstick cookware coating.

Sub–Class 3. All purchasers or owners of cookware coated with DuPont non-stick coating who do not qualify as members of Sub–Class 1 or 2.

Ex. D to Plaintiff's Post–Hearing Mem., at 1.

The independent class actions set forth a number of causes of action, including: breach of express warranty, breach of implied warranty, declaratory judgment, injunction, failure to warn, false advertising, fraudulent concealment, negligent misrepresentation, negligence, strict liability, statutory unfair and deceptive trade practices, and unjust enrichment/restitution. The actual claims pled in each complaint vary, based on the laws of the particular jurisdiction at issue.[8]

Plaintiffs claim entitlement to a variety of remedies as redress for DuPont's allegedly wrongful conduct. These remedies include:

1) creation of a fund for independent scientific researchers to further investigate the potential for adverse health effects from the use of products containing DuPont's non-stick coating;

2) a requirement that DuPont discontinue manufacturing, selling and/or distributing cookware containing the non-stick coating, and/or to compel DuPont to stop making misstatements, misrepresentations and or omissions regarding the safety of its product;

3) to require DuPont to replace and/or exchange all existing cookware containing DuPont non-stick coating possessed by class members with non-hazardous cookware, or to provide the cash equivalent;

4) equitable relief, including rescission and restitution; and

5) a requirement that DuPont provide an appropriate warning label or other disclosure on cookware made with or containing DuPont non-stick coating.

## II. APPLICABLE LAW AND DISCUSSION

### A. Rule 23 Prerequisites

■ As set forth above, plaintiffs move to certify twenty-three state-wide classes asserting various statutory and common law causes of action against DuPont. The law governing certification is set forth under Rule 23(a) of the Federal Rules of Civil Procedure. This Rule states as follows:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative

---

8. The jurisdictions remaining in this MDL proceeding are: Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Illinois, Indiana, Iowa, Kentucky, Massachusetts, Michigan, Montana, Nebraska, New Jersey, New Mexico, Nevada, Ohio, Oklahoma, Pennsylvania, South Carolina, Texas and West Virginia.

parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The burden is on the party seeking certification to satisfy each of the above factors. *Bishop,* 686 F.2d at 1288; *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In evaluating a motion for certification, the court must "accept[ ] as true" the *substantive* facts as alleged in the complaint,[9] but must also look beyond the pleadings to evidence submitted by the parties in order to ensure specific prerequisites have been satisfied. *Bishop,* 686 F.2d at 1288.

Assuming a party seeking certification is able to satisfy all of the factors expressly set forth under Rule 23(b), the party must also satisfy at least one of the conditions enumerated under Rule 23(b). Fed.R.Civ.P. 23(b); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citing Rule 23(b)). Rule 23(b)(2) authorizes certification of a class action if the conditions set forth under Rule 23(a) are satisfied, and, in addition: "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Alternatively, a party may achieve class certification under Rule 23(b)(3) if the party satisfies all of the Rule 23(a) conditions, and shows: "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In the present case, plaintiffs assert that the proposed class actions in states having a liquidated statutory penalty, or where only injunctive relief is sought, are properly certified under Rule 23(b)(2).

Plaintiffs seek certification under Rule 23(b)(3) for actions in the remaining states— those states without a statutory remedy, and where proof of individual reliance is not required.[10]

### B. Implicit Requirements

In addition to the above factors, numerous courts also have recognized two "implicit" prerequisites: 1) that the class definition is drafted to ensure that membership is "capable of ascertainment under some objective standard;" and 2) that all class representatives are in fact members of the proposed class. *See, e.g., Fournigault v. Independence One Mortgage Corp.,* 234 F.R.D. 641, 644–45 (N.D.Ill.2006); *Liles v. Am. Corrective Counseling Servs.,* 231 F.R.D. 565, 571 (S.D.Iowa 2005); *Dumas v. Albers Med., Inc.,* No. 03–0640–CV–W–GAF, 2005 WL 2172030, at *5 (W.D.Mo. Sept.7, 2005); *Elizabeth M. v. Ross,* No. 8:02CV585, 2005 WL 1206150, at *2 (D.Neb. May 11, 2005) (recognizing both additional factors as necessary to certification of class); *rev'd on other grounds,* 458 F.3d 779 (8th Cir.2006); *McElhaney v. Eli Lilly & Co.,* 93 F.R.D. 875, 877 (D.S.D.1982); *see also see also Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir.1976) ("[T]he definition of the class is an essential prerequisite to maintaining a class action."); *Carson P. ex rel. Foreman v. Heineman,* 240 F.R.D. 456, 495–502 (D.Neb.2007) (recognizing that "class should be clearly defined at the outset of litigation," and proceeding to redraft definition to sufficiently narrow and clarify subclasses of potential litigants). As stated in *Liles:* "Although the Eighth Circuit has not yet included these 'implicit' factors in a published opinion addressing Rule 23, the Court is satisfied both factors are logical and supported by the law." *Id.* (citing *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)) ("As this Court has repeatedly held, a class representative must be a part of the class and 'possess the same interest and suf-

---

**9.** *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (courts lack the authority to "conduct a preliminary inquiry into the merits of a suit in determining whether it may be maintained as a class action").

**10.** In their reply memorandum, plaintiffs deny DuPont's assertion that they waived certification under Rules 23(b)(1) or (c)(4). This issue is discussed more fully, below.

fer the same in jury' as the class members.") (internal citation omitted).

Because the class definition is at the heart of any decision on certification, the Court will begin its analysis by considering these "implicit" factors.[11]

### 1. Sufficiency of Class Definition

██ A well-crafted class definition must ensure that the Court can determine objectively who is in the class, and therefore, bound by the ultimate ruling. *Dumas,* 2005 WL 2172030 at *5. The Court should not be required to resort to speculation, *see, e.g., Liles* 231 F.R.D. at 572, or engage in lengthy, individualized inquiries in order to identify class members. *Dumas,* 2005 WL 2172030 at *5 (citing *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir.1981)).

██ As set forth above, plaintiffs' revised class definition is divided into three sub-classes.[12] Unfortunately for plaintiffs, however, the newly-created sub-classes do little to ease the Court's concerns regarding ascertainability. Each sub-class is addressed in turn, below.

#### a. Sub–Class One

Sub-class one covers individuals who purchased NSCC labeled with the Teflon®, Autograph®, or Silverstone® trademarks, and who "continue to possess the cookware, cookware packaging, or other documentation of the cookware." Ex. D to Plaintiffs' Post–Hearing Mem. at 1. Individuals in this sub-class must have *purchased* their cookware in the state covered by the particular complaint, within the state's statute of limitations period. *Id.*

Few proposed representatives have been able to meet this definition. As illustrated by the "Cookware Summary" in Defendant's Exhibit 9, plaintiffs produced documentation identifying the cookware for less than 8% of the items submitted for consideration. Defendant's Ex. 9 at 2. Packaging, literature and/or labels were available for only 5.6% of the items collected. *Id.* Furthermore, the proposed representatives did not know the date or state of purchase for 22.2 and 32.4% percent of the items, respectively.

Accordingly, the proposed representative's own testimony, coupled with the cookware item itself, were the only evidence available to establish membership in sub-class one in the vast majority of cases. Neither have been shown to be particularly reliable.[13]

For example, proposed Texas sub-class one representative Kimberly Cowart testified in her deposition that she did not know whether the pan upon which she bases her claims against DuPont in fact has a Teflon® non-stick coating, but simply *believes* it must be Teflon® "[b]ecause when I purchased the pan, I would have only purchased it if it had said Teflon®." Defendant's Ex. 11, Cowart Dep. at 103–04. She testified further that she did not recall purchasing her pan, did not remember anything about the packaging that came with the pan, and knew only that she purchased it "more than five years ago." *Id.* at 104–05.

Similar to Ms. Cowart, proposed New York sub-class one representative Gary Frechter believed his pan to be a Teflon®-coated product because: "It is older than the rest, and I thought it was Teflon® because [my wife and I] looked for Teflon® products." Defendant's Ex. 11, Frechter Dep. at 113. When questioned further, however, Mr. Frechter indicated he could not ensure his pan actually contained a non-stick coating, and could not identify the place or even decade of purchase. *Id.* at 113–14; *see also* Defendant's Ex. 11, O'Laughlin Dep., Vol. II, at 152 (proposed New Jersey sub-class one rep-

---

**11.** In choosing to begin in this manner, the Court does not mean to suggest that the "implicit factors" are more important than those set forth under Rule 23. Rather, the Court simply finds an evaluation of the class definition to be a logical first step in its analysis.

**12.** Plaintiffs' Exhibit 61a outlines which individuals it proposes will represent each sub-class.

**13.** As demonstrated by the product photographs contained in Defendant's Exhibit 12, many of the pans submitted by proposed representatives had no visible product markings or labels. Even those containing a brand marker could not be identified as containing a Teflon® coating, however, due to uncertainties regarding the year in which the product was manufactured and/or purchased.

resentative testified she "believed" her Wear-ever pan had Teflon® coating because in the past, she specifically looked for pans with Teflon® coating); Defendant's Ex. 11, Casper Dep. at 92 (proposed Massachusetts sub-class one representative testified she believed her Copco pan had Teflon® coating because "it's very old, and I don't recall it being any other options besides Teflon® 35, 40 years ago").

### b. Sub–Class Two

Sub-class two includes purchasers of certain NSCC that was not necessarily sold with a DuPont trademark, but was sold under a brand name believed to contain Teflon® coating during the time-frame at issue. Ex. D to Plaintiffs' Post–Hearing Mem. at 1. During the hearing, plaintiffs contend that they and/or DuPont can establish with relative certainty which brands of cookware were made with DuPont non-stick coating during certain time periods, and that those brands are incorporated into the definition of sub-class two. DuPont vigorously disputes the reliability of the third-party manufacturer records, however. Furthermore, deposition testimony of various cookware manufacturers' representatives shows that it is virtually impossible to identify a brand of non-stick coating based on a visual examination of the item of cookware. Defendant's Ex. 14A, Bradshaw Dep. at 52–53; Defendant's Ex. 14E, Kaur Dep. at 156. Lastly, membership in this class necessarily requires a plaintiff to pinpoint the date on which he or she purchased the item of cookware. As demonstrated in DuPont's Cookware Summary, the proposed class representatives were unable to recall this information almost one-fourth of the time. Defendant's Ex. 9 at 2.

### c. Sub–Class Three

Lastly, sub-class three includes: "All purchasers or owners of cookware coated with DuPont non-stick coating who do not qualify as members of Sub–Class 1 or 2." Ex. D to Plaintiffs' Post–Hearing Mem. at 1. This "catch-all" sub-class theoretically includes anyone who *believes* he or she has *ever* owned or purchased an item of cookware containing DuPont nonstick coating, regard-less of whether an objective basis exists to support that belief. Notably, an individual does not even need to possess the pan to assert a claim under this sub-class.

Proposed Illinois sub-class 3 representative Paula Bardwell is illustrative of these individuals. Ms. Bardwell conceded in her deposition that she did not know either the specific type of non-stick coating used on any of her three pieces of cookware or the date(s) on which she purchased the cookware. Nor did she have the original packaging to ensure the non-stick coating was manufactured by DuPont. Defendant's Ex. 11, Bardwell (IL) Dep. at 145–46. In fact, when questioned further by defense counsel, Ms. Bardwell admitted she was unsure whether she in fact purchased the cookware in the State of Illinois. *Id.*

### d. Conclusion Regarding Sufficiency of Definition

In short, too many infirmities exist in the present class definitions to ensure the Court can determine objectively who is in the class, without resort to speculation. *Dumas,* 2005 WL 2172030 at *5. As argued by DuPont, many class representatives mistakenly believe their product contained Teflon® coating—even when they were informed the particular brand of cookware at issue never used Teflon®. *See, e.g.,* Defendant's Ex. 11, Howe Dep. (CA) at 42 (mistakenly believed Circulon pan was sold with a label indicating it contained Teflon); Defendant's Ex. 14C, Hartwell Dep. at 115–17 (DuPont global accounts manager testified Circulon made only with unbranded NSCC). Others believe *all* non-stick coating is from DuPont, shedding further doubt on the feasibility of ensuring membership with objective certainty. *See* Defendant's Ex. 11, Newsome Dep. (WV) at 19–20 (agreeing, as of the date of the deposition, that all non-stick cookware made by DuPont); Defendant's Ex. 11, Elbert Dep. (IA) at 48–49 (believing that all non-stick coatings are Teflon®).

In their reply memorandum, plaintiffs argue that at this stage, they do not need to show that each class member ultimately will be able to prove his or her membership; rather, the Court need only ensure that the

appropriate criteria exists to *evaluate* membership " 'when the time comes.' " Plaintiffs' Reply Mem. at 20 (citing *Fournigault v. Independence One Mort. Corp.,* 234 F.R.D. 641, 644–45 (N.D.Ill.2006)). Unfortunately for plaintiffs, this argument necessarily depends upon the availability of better evidence to establish membership at a later stage of the proceeding. No such additional evidence will be produced in the present case. Rather, even after a lengthy discovery period, during which each proposed representative was thoroughly deposed, many individuals themselves are unable to ascertain whether they belong in a particular sub-class. Neither the Court nor DuPont is in any better position to do so.[14] In *In re Phenylpropanolamine (PPA) Products Liability Litigation,* 214 F.R.D. 614, 617–19 (W.D.Wash.2003), the court declined to certify a class consisting of purchasers of medication where the class definition required a plaintiff to rely largely on his or her own memory in order to establish membership. The Court reasoned that such an infirmity foreshadowed extreme manageability problems further into the litigation. *Id.* Quoting the Seventh Circuit's decision in *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir. 1981), the *In re PPA* court stated:

> "Identification of the class serves at least two obvious purposes in the context of certification. First, it alerts the court and parties to the burdens that such a process might entail. In this way the court can decide whether the class device simply would be an inefficient way of trying the lawsuit for the parties as well as for its own congested docket. Second, identifying the class insures that those actually harmed by defendants' wrongful conduct will be the recipients of the relief eventually provided."

*In re PPA,* 214 F.R.D. at 617. In other words, certifying a class with a weak definition creates more problems later in the proceeding. If the parties are unable to establish membership in a particular sub-class in an objective fashion at the commencement of the litigation, it is highly unlikely that liability and/or damages can later be established without relying on lengthy, individualized inquiry.

Accordingly, the Court finds that the revised definition submitted by plaintiffs fails to provide an objective basis to determine several facts significant to establishing membership: 1) whether the cookware item in fact contains DuPont non-stick coating; 2) whether the item was purchased or obtained in some other manner; and 3) if purchased, whether the item was purchased in the state at issue within the applicable statute of limitations period. Without a clear basis for determining this information, plaintiffs' class definition necessarily fails.

#### 2. Whether Proposed Representatives Satisfy Definition

■ The second "implicit requirement" of Rule 23 is that each proposed representative is in fact a member of the proposed class, or, in this case, sub-class. As outlined above, however, the fact the vast majority of plaintiffs must rely on memory to establish crucial facts will prevent the parties and the Court from ever being able to establish membership with objective certainty. Without such an assurance, the Court cannot in good conscience grant certification.

#### C. Requirements of Rule 23(a)

Even assuming the class definition had been drafted to ensure that membership is "objectively ascertainable," and that at least

---

**14.** Documentary evidence is not necessarily crucial to granting class certification. *See Fournigault,* 234 F.R.D. at 644–45 ("The parties should not have to delve into the merits of the case to determine membership in the class.") (internal quotation omitted). In *Fournigault,* however, it appeared that records *existed* to support a person's membership in the class; the records simply had not been obtained by plaintiffs at the time of class certification. *Id.* at 644. The court granted certification by reasoning: "I am only concerned with having the proper criteria to

evaluate [proposed class members] when the time comes." *Id.*

As stated in the body of this Order, the present plaintiffs lack the promise of any additional evidence. Because an abundance of proposed representatives have no memory whatsoever of the circumstances surrounding their purchase of the cookware—let alone the assurance that records exist to document their purchase—no reasonable fact-finder will ever be able to determine in which subclass, if *any,* these individuals belong.

one viable class representative exists for each of the sub-classes put forth by plaintiffs, plaintiffs must nevertheless satisfy all four prerequisites listed in Rule 23(a).

### 1. Numerosity

Rule 23(a)(1) requires that the "class be so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The Eighth Circuit has not adopted any "rigid rules regarding the necessary size of classes." *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir.1987), *rev'd on other grounds*, 487 U.S. 1229, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988). Rather, a reviewing court must consider such factors as "the number of persons in the proposed class, the type of action at issue, the monetary value of the individual claims and the inconvenience of trying each case individually." *Liles*, 231 F.R.D. at 573 (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir.1982)).

In the present case, DuPont does not appear to contest the issue of numerosity, and the Court is satisfied that the number of potential claimants in each state-wide class is sufficiently large as to satisfy this Rule 23(a) prerequisite.

### 2. Commonality

█ The second express prerequisite is that each class member's claims contain "questions of law and fact common to the class." Fed.R.Civ.P. 23(a)(2). To establish "commonality" for purposes of this subsection, it is not necessary to demonstrate that *every* question of law or fact is common to each member of the class. *Paxton*, 688 F.2d at 561. Rather, the issues linking the class members must be "substantially related" to resolution of the case. *Id.; see also DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir.1995) (quoting *Paxton*).

Plaintiffs have alleged several legal and factual issues they contend are common to all potential class members. *See* Plaintiffs' Mem. at 31–32. Principal among these issues are: 1) Whether DuPont knew or should have known that the release of chemical substances during the normal, ordinary and foreseeable use of cookware coated with its non-stick coating posed potential risk to human health; 2) whether DuPont knowingly made false, public representations regarding the safety of its NSCC; 3) whether the class representatives' claims are sufficiently similar to the claims of prospective class members; 4) whether DuPont's failure to disclose was uniform across the class; 5) whether equitable relief, in whole or in part, is an appropriate remedy for DuPont's wrongful behavior; and 6) whether a warning label or other appropriate disclosure should be affixed to all pots and pans made with Du-Pont's NSCC.

Short of conceding the commonality requirement, DuPont argues that plaintiffs are nevertheless unable to show that the common questions predominate over the individual issues, as required under Rule 23(b)(3). For purposes of this motion only, the Court will assume plaintiffs have satisfied the relatively minimal commonality requirement under Rule 23(a)(2), and will focus instead on the predominance requirement, below. *See Amchem*, 521 U.S. at 609, 117 S.Ct. 2231 (Rule 23(a)(2) is "subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions."); *see also Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 153 (S.D.Iowa 2001) (citing *Amchem*).

### 3. Typicality

█ Dupont also challenges plaintiffs' ability to establish "typicality." To satisfy this requirement, the proponent of certification must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). In general, typicality is established if the claims of all members arise from a single event or share the same legal theory. *Paxton*, 688 F.2d at 561–62. If the legal theories of the representative plaintiffs are the same or similar to those of the class, slight differences in fact will not defeat certification. *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir.1996).

█ In the present case, plaintiffs appear to build the majority of their claims around particular statements made and/or marketing

practices employed by DuPont regarding its NSCC products. According to plaintiffs, the fact that each cause of action derives from a common practice or course of conduct on the part of DuPont renders the claims made by a representative plaintiff typical of the claims of all class members.[15]

This Court does not agree. "The presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006) (citing *Parke v. First Reliance Stnd. Life Ins. Co.*, 368 F.3d 999, 1004–05 (8th Cir.2004)). "[I]n situations where claims turn on individual facts, no economy is achieved, and the typicality requirement cannot be met." *Mahoney*, 204 F.R.D. at 154 (citing *Guillory v. American Tobacco Co.*, No. 97 C 8641, 2001 WL 290603, at *5 (N.D.Ill. Mar.20, 2001)) (finding typicality requirement not satisfied where claims inconsistent from one plaintiff to another).

As noted by DuPont, the alleged misstatements and/or falsities cited by plaintiffs span a forty-plus-year period, across a wide variety of advertising and promotional media. Each plaintiff was exposed to different representations, at different time periods. Because reliance is a key element of plaintiffs' claim for negligent misrepresentation,[16] and is necessary for recovery under the consumer fraud statutes in many jurisdictions, an individualized inquiry must be conducted not only to pinpoint the representation(s) at issue, but also to determine the extent to which each plaintiff relied upon the particular representation(s). Accordingly, DuPont claims that any common questions that may

exist do not predominate over the individual issues.

Based on the variety of circumstances under which each proposed plaintiff undoubtedly purchased and proceeded to use his or her NSCC, as well as the varying degrees to which each plaintiff became educated about NSCC prior to purchase, this Court is inclined to agree with DuPont's position on this issue. For example, the exposure to and reliance on DuPont's allegedly false statements regarding the safety of nonstick cookware is a common element of many of plaintiffs' claims. Due to the widespread nature of DuPont's advertising over the years, however, determining the precise statements each plaintiff heard can only be accomplished through individualized inquiry. *See. e.g., In re Sears, Roebuck & Co. Tools Marketing & Sales Practices Litig.*, MDL No. 1703, Nos. 05 C 4742, 05 C 2623, 2007 WL 4287511, at *6 (N.D.Ill.Dec.4, 2007) (no typicality "where a putative class is exposed to a varied mix of representations communicated through different channels and absorbed in different ways and to different degrees"); *Mahoney*, 204 F.R.D. at 154 (no typicality where "proof [could] only come from a case-by-case analysis of each Class member's exposure to defendant's advertising").

Perhaps more importantly, even if class members were exposed to the same representation, advertisement, or omission, the Court cannot presume that each member responded to the representation or omission in an identical fashion. In *Mahoney*, this Court found typicality not satisfied upon evidence that some plaintiffs "may have started smoking and continued to smoke even if full disclosures had been made." *Mahoney*, 204

---

**15.** During the hearing, plaintiffs attempted to characterize their case as based solely on DuPont's alleged *omissions*, rather than on a series of false representations. This characterization is not consistent with the allegations set forth in the Complaint and in plaintiffs' initial and reply memoranda, nor is it consistent with the elements necessary to prove many of the individual claims alleged. *See* Complaint at ¶ 1 ("The case arises from DuPont's deceptive and unfair trade practices *in making false, misleading, deceptive and unconscionable representations ....*"); *see also* Plaintiff's Initial Mem. at 31 (expressly identifying as common question of law or fact "Whether DuPont made public representations

... that DuPont's NSCC ... was safe or healthful...."); Plaintiff's Reply Mem. at 48 ("Plaintiffs' claims are centered upon DuPont's misrepresentation ... and its omission)

Significant pre-trial discovery and proceedings have been completed to date following plaintiffs' theory that DuPont affirmatively misrepresented the safety of its product (*as well as* failed to warn consumers of safety risks). The Court will not allow plaintiffs to change course at this late date.

**16.** *See, e.g.,* Restatement (Second) of Torts § 552 (1977).

F.R.D. at 154. In the present case, deposition testimony submitted by DuPont shows that although some proposed class representatives who became informed of potential health risks from NSCC stopped using the cookware, others exposed to similar information not only continued to use their existing cookware, but purchased new non-stick cookware. *Compare* Defendant's Ex. 11, Pesut Dep. (New Jersey) at 144–145 ("I won't use it, I won't purchase it, and if [my family] chooses to do so, then they can do that."); *with* Defendant's Ex. 11, Finol Dep. (Florida) at 298 (as of date of deposition, admits to using Teflon®-coated cookware at high temperatures).

The Court acknowledges that a number of states maintain consumer fraud or protection statutes that do not require reliance for recovery.[17] In these jurisdictions, however, individualized inquiry remains necessary to identify the alleged representation at issue, and the date on which the representation was made. For example, taking as true the allegations pled in plaintiffs' master complaint, DuPont was not made aware of potential toxic effects of PFOA until 1981. Complaint at 13–14. It can hardly be said that any advertisements or claims of safety made by DuPont before that date were fraudulent or misleading. If a particular plaintiff, such as Ms. Casper of Massachusetts, purchased her cookware item before 1981, her claims could not be considered "typical" of the class, because she could not have been exposed to fraudulent or false advertising. The Court therefore concludes that plaintiffs have failed to establish the typicality requirement set forth under Federal Rule of Civil Procedure 23(a)(3).

### 4. Adequacy of Representation

■ The fourth express requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Two factors are relevant to this inquiry: 1) whether the named representatives and their counsel are willing and competent to pursue the litigation; and 2) whether the interests of the representative plaintiffs are antagonistic to the interests of others in the class. *See, e.g., Hervey v. City of Little Rock,* 787 F.2d 1223, 1230 (8th Cir.1986); *Paxton,* 688 F.2d at 562–63.

■ With regard to the first factor, the Court finds that plaintiffs have retained competent counsel who appear well-versed in class action litigation. Although several of the individual plaintiffs could benefit from further research into the nature and background of their claims, the Court is confident each will continue to pursue the litigation to the best of his or her ability.[18] The fighting issue is whether the interests of the putative class members are sufficiently similar to those of the class such that it is "unlikely that their goals and viewpoints will diverge." *Carson P. ex rel. Foreman v. Heineman,* 240 F.R.D. 456, 509 (D.Neb.2007).

DuPont contends that plaintiffs' decision to relinquish possible claims for personal injury, products liability or medical monitoring effectively has resulted in "claim-splitting," and prevents the representative plaintiffs from adequately representing the full interests of absent class members. *See, e.g., Thompson v. Am. Tobacco Co.,* 189 F.R.D. 544, 550 (D.Minn.1999) (finding that "the named Plaintiffs' efforts to reserve personal injury and damage claims may, in fact, jeopardize the class members' rights to bring such claims in a subsequent case"); *see also Krueger v. Wyeth, Inc.,* No. 03cv2496 JLS (AJB), 2008 WL 481956, at *3–4 (S.D.Cal. Feb. 19, 2008) (citing *Thompson* and concluding that representative plaintiff's decision not to pursue personal injury claim against man-

---

**17.** Of course, reliance must be shown in these jurisdictions to prove plaintiffs' claim for negligent misrepresentation.

**18.** This assumes, of course, that plaintiffs' proposed representatives are in fact members of the subclasses each purports to represent.

During the hearing, and in their post-hearing submission, Dupont makes much of the fact that many of the proposed class representatives have familial or other ties to plaintiffs counsel, and would therefore be reluctant to challenge counsel with regard to decisions impacting the class. Based on the Court's finding with regard to claims-splitting, the Court declines to rule on this issue.

ufacturer of hormone replacement drug rendered her inadequate representative of class); *Millett v. Atlantic Richfield Co.*, No. CIV.A. CV–98–555, 2000 WL 359979, at *9 (Me.Super.Mar.2, 2000) (finding class representatives inadequate in claim against chemical and petroleum companies when personal injury claim dropped).

*Thompson* was a purported class action filed by smokers against several multi-national tobacco companies seeking the "disgorgement of profits; compensatory damages; the establishment of a smoking cessation program and a court-administered medical monitoring program funded by the Defendants." *Thompson*, 189 F.R.D. at 547. For reasons unspecified, however, the plaintiffs in *Thompson* expressly reserved any claims for personal injury and damage, and sought to proceed solely on their request for a tobacco company-funded smoking cessation program and medical monitoring. *Id.* When evaluating the propriety of certification under Rule 23(a)(4), the district court noted that the principles of *res judicata* might prevent class members from bringing claims for personal injury in a subsequent litigation. *Id.* Quoting from *Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593, 601–02 (N.Y.A.D. 1 Dept.1998), the *Thompson* court cautioned:

> [R]epresentatives who tailored the class claims in an effort to improve the possibility of demonstrating commonality obtained this essentially cosmetic benefit only by presenting putative class members with significant risks of being told later that they impermissibly split a single cause of action.

*Id.* (additional citation omitted).

■ In the present case, to succeed under any one of their alternative bases for relief, plaintiffs necessarily must establish first that DuPont's NSCC is dangerous to the health of its users. Accordingly, any trial on the merits of plaintiffs' claims would include medical expert testimony on the dan-

gers of PFOA exposure and/or polymer fume fever. *See* Plaintiffs' Mem. at 7–12 (summarizing proposed testimony regarding harmful health effects of chemicals emitted by DuPont's NSCC). By abandoning their original claims for medical monitoring, and expressly disavowing any current claim for personal injury, *see id.* at 2, the representative plaintiffs risk a future waiver not only of their own personal injury and medical monitoring claims, but also those of the absent class members.

■ Among other requirements,[19] " 'a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim.' " *Yankton Sioux Tribe v. United States Dept. of Health & Human Servs.*, 533 F.3d 634, 641 (8th Cir.2008) (quoting *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir.1990)). As noted by DuPont, the fact that plaintiffs included claims for medical monitoring in their original complaints suggests that the claims *could have* been brought in the present litigation.

In their reply memorandum, plaintiffs cite to the United States Supreme Court's decision in *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 881, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) as definitively establishing a "class action exception to *res judicata*" that protects the right of individual plaintiffs to bring subsequent personal injury actions. This Court does not agree. At issue in *Cooper* was whether the district court had a *duty* to resolve the merits of the individual claims of each class member. The Court inferred that the district court's authority was *discretionary*, but that it was not *required* to adjudicate individual claims along with the common claims. *See Cooper*, 467 U.S. at 881, 104 S.Ct. 2794 ("Nothing in Rule 23 requires as a matter of law that the District Court make a finding with respect to each and every matter on which there is testimony in the class action."); *see also Edwards v. Boeing Vertol Co.*, 750 F.2d 13, 15 (3rd Cir.1984) ("It might be inferred, from language in the *Cooper* opinion, that the dis-

**19.** The other requirements are 1) that the first litigation ended in a final judgment on the merits; 2) the court hearing the first litigation had proper jurisdiction over the claims and parties; and 3) both suits involved the same parties or those in privity with them. *Yankton Sioux Tribe*, 533 F.3d at 639.

trict court had discretion to adjudicate such claims if it so desired; a question we need not decide.").

Assuming, as it must, that DuPont's NSCC poses a genuine risk of injury to consumers, this Court, like *Thompson,* believes that any *possibility* that a subsequent court could determine that claims for personal injury and medical monitoring were barred by *res judicata* prevents the named plaintiffs' interests from being fully aligned with those of the class. *Thompson,* 189 F.R.D. at 551.[20] The Court therefore concludes plaintiffs are unable to establish the "adequacy of representation" requirement set forth in Rule 23(a)(4).

### D. Rule 23(b) Factors

Even assuming the other barriers to certification under Rule 23(a) could be remedied, the Court finds plaintiffs face insurmountable hurdles under Rule 23(b). As set forth above, in addition to satisfying the Rule 23(a) prerequisites and, arguably, the implicit factors cited in part II(B) above, a party seeking class certification must also satisfy one of three subsections of Rule 23(b). In the present case, plaintiffs assert that each purported class action meets at least one of the Rule 23(b) factors.

#### 1. Rule 23(b)(2)

Plaintiffs contend that those states in which a liquidated statutory penalty exists, or where only injunctive relief is sought, may be certified under Rule 23(b)(2).[21] This subsection authorizes the maintenance of a class action where, in addition to satisfying Rule 23(a), "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . ." Fed.R.Civ.P. 23(b)(2).

#### a. Whether Injunctive Relief is Primary Relief Sought

 As the rule itself makes clear, certification under Rule 23(b)(2) is intended for classes seeking primarily injunctive or declaratory relief—not money damages. *In re St. Jude Medical, Inc.,* 425 F.3d 1116, 1121 (8th Cir.2005). Nevertheless, the fact the plaintiffs may also seek damages which are *incidental* to injunctive or declaratory relief will not defeat an otherwise proper certification. *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1175 (8th Cir.1995); *see also Paxton,* 688 F.2d at 568.

 The parties dispute whether the money damages sought by plaintiffs in these collective actions are in fact incidental to other requested relief. As noted by DuPont, plaintiffs list "economic damage" first on their list of potential remedies sought. *See* Plaintiffs' Mem. at 2 ("Plaintiffs' claims seek recovery for economic damage only, whether in the form of damages, statutory remedies, injunctive or equitable relief, or rescission, as opposed to damages for physical injury."). Unlike *Paxton,* where the plaintiffs sought an end to widespread racial discrimination within the defendant bank's promotional practices, or *DeBoer,* where a group of mortgage clients sued to end a bank's allegedly unlawful escrow practices, no such sweeping

---

**20.** The Court rejects plaintiffs' attempts to distinguish *Thompson* on the basis that its principle claims arose from products liability, rather than consumer fraud or protection laws. What is significant for *res judicata* purposes is that both personal injury and medical monitoring claims *could have been brought* in the present case.

Plaintiffs cite to *Gasperoni v. Metabolife Int'l, Inc.,* No. 00–71255, 2000 WL 33365948, at *4 (E.D.Mich. Sept.27, 2000), for the premise that the risk of subsequent claims being barred by *res judicata* is minimal in consumer fraud actions. In *Gasperoni,* the court declined to adopt the defendant's *res judicata* argument on the basis that persons with ripe personal injury claims could opt out of the class. *Id.* at *4. It also reasoned that: "Any personal injuries that devel-

op in class members after the present suit, will not be subject to res judicata because their claim will not have been actually litigated, nor will it be one that 'might have been raised' in the previous suit." *Id.* Assuming without deciding that this latter premise is true, *Gasperoni* does little to ease this Court's concerns regarding plaintiffs' claims for medical monitoring, however. These claims not only *could have been brought,* but *were* dropped and abandoned. This Court cannot predict with certainty whether a future court would consider the claims barred by *res judicata.*

**21.** The states in this category are: Indiana, Massachusetts, Michigan, New Mexico, New York, Pennsylvania and West Virginia.

reform is requested in the present case. *See Paxton,* 688 F.2d at 563; *DeBoer,* 64 F.3d at 1173. Rather, the lone form of injunctive relief addressed in plaintiffs' opening memorandum is a "warning label and/or other related disclosures to the public or other action." Plaintiffs' Mem. at 40. Without a request either to end or alter DuPont's methods of producing its NSCC, the Court finds plaintiffs have failed to show that they would have filed similar litigation seeking purely injunctive relief "even in the absence of a claim for damages." *In re St. Jude,* 425 F.3d at 1122 (quotation omitted). As emphasized in *St. Jude,* class certification under Rule 23(b)(2) is intended for those groups hoping to achieve broad-based injunctive relief, rather than cases in which a lawyer " 'located a plaintiff and brought a class action in the hope of a fee.' " *Id.* (quoting *In re Rezulin Prods. Liab. Litig.,* 210 F.R.D. 61, 73 (S.D.N.Y.2002)).

#### b. Cohesiveness

■ Regardless of whether the economic damages sought are incidental to other requested relief, plaintiffs' purported classes also fail to meet another requirement of Rule 23(b)(2): "cohesiveness." Because actions certified under this subsection do not allow individual members to opt out, courts demand that the classes be "cohesive," or that the members be " 'bound together through preexisting or continuing legal relationships or by some significant common trait such as race or gender.' " *In re St. Jude Medical, Inc.,* 425 F.3d 1116, 1121 (8th Cir.2005) (quoting *Holmes v. Cont'l Can Co.,* 706 F.2d 1144, 1155 n. 8 (11th Cir.1983) (internal citations and quotation omitted)). As explained by the court:

> Although Rule 23(b)(2) contains no predominance or superiority requirements, class claims thereunder still must be cohesive. *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 143 (3d Cir.1998). Because "unnamed members are bound by the action without the opportunity to opt out" of a Rule 23(b)(2) class, even greater cohesiveness generally is required than in a Rule 23(b)(2) class. *Id.* at 142–43. "A suit could become unmanageable and little value would be gained in proceeding as a

class action ... if significant individual issues were to arise consistently." *Id.* (citation and quotation omitted); *see also Lemon v. Int'l Union of Operating Eng'rs,* 216 F.3d 577, 580 (7th Cir.2000) (same).

*Id.*

Again, this is not a case in which members of the same racial minority or gender have bound together to fight against perceived discrimination. Nor does it involve a group of consumers hoping to rectify injustices in mortgage lending practices. The Court would be hard-pressed to conclude that the sole common trait necessarily shared by all plaintiffs—ownership of cookware with a non-stick coating manufactured by DuPont—renders each class cohesive under the meaning of Rule 23(b)(2). The Court therefore concludes that certification is not appropriate for any of seven state classes listed above under Rule 23(b)(2).

#### 2. Rule 23(b)(3)

Plaintiffs attempt to achieve certification with regard to the remaining, "opt-out" classes under Rule 23(b)(3). As set forth above, certification under this subsection requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

#### a. Predominance

■ "When 'making the determination as to predominance, of utmost importance is whether [the issue is] ... common to the class and subject to generalized proof, or whether it is instead an issue unique to each class member.' " *Johnson v. GMAC Mortg. Group, Inc.,* No. 04–CV–2004–LRR, 2006 WL 2433474, at *2 (N.D.Iowa Aug.21, 2006) (quoting *Blades v. Monsanto Co.,* 400 F.3d 562, 569 (8th Cir.2005)). Significantly, however, "the fact that a proposed class meets the *commonality* requirement under Rule 23(a)(2) does not necessarily mean it also will satisfy Rule 23(b)(3)." *Liles,* 231 F.R.D. at 575.

To evaluate predominance, the district court must examine the type of evidence needed to establish a plaintiff's case. *Dumas*, 2005 WL 2172030 at *3.

If, to make a prima facie showing on a given question, the members of a proposed class must present evidence that varies from member to member, then it is an individual question for purposes of Rule 23(b)(3); if the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

*Id.; see also Castano v. Am. Tobacco*, 84 F.3d 734, 744 (5th Cir.1996) ("a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues").

In the present case, plaintiffs have presented the Court with very little guidance as to how they intend to prove the elements of each claim. Instead, plaintiffs assert that the lack of any claim for personal injury will allow damages to be demonstrated on a class-wide, rather than individual, basis, and that this fact is somehow sufficient to establish predominance.

This Court does not agree. As discussed above in the context of ascertainability, the only common factor binding together all of the present plaintiffs is use of non-stick coated cookware. The fact each class represents a particular state or geographic region does not ensure the purported members of that class used the same brand of cookware, purchased or otherwise obtained their cookware during the same general time period and within the same state or jurisdiction, witnessed the same media advertisements and promotional materials, and/or used their cookware with the same frequency and at the same degree of heat. In order to recover, each plaintiff may be required to show that he or she purchased NSCC manufactured by DuPont within the time period allowed under the applicable statute of limitations.[22] Each of these issues will require an individualized

inquiry, which the Court believes will render each class action unmanageable. In the words of the New Jersey Superior Court: " 'This is the antithesis of commonality.' " *Arons v. Rite–Aid*, No. BER–L–4641–03, 2005 WL 975462, at *18 (N.J.Super. Ct. Law Div. Mar. 23, 2005) (as quoted in *Dumas*, 2005 WL 2172030 at *4).

b. Superiority

The second test under Rule 23(b)(3) is whether the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). In evaluating superiority, the Court must consider four non-exclusive factors:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

In arguing against the class action approach, DuPont again cites to the myriad of issues that must be resolved on an individual basis. Throughout these proceedings, DuPont has made it abundantly clear that it has no plans to relinquish its right to cross-examination and individual proof of injury. *See, e.g., In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 221 (E.D.La.1998) (plaintiffs' proposal to prove causation through individual affidavits submitted to special master rejected as "one-sided procedure [which] would amount to an end-run around defendant's right to cross-examine individual plaintiffs"). DuPont thus contends that the failure of plaintiffs' counsel to propose a trial plan to help resolve these issues renders the class action approach unmanageable.

---

**22.** The Court acknowledges that many issues exist regarding DuPont's statute of limitations defense, including potential application of the discovery rule. Because the Court believes such issues are not determinative of the outcome of this motion, it chooses not to address these issues at this time.

Plaintiffs attempt to downplay the manageability concerns by arguing that without the class action vehicle, very few plaintiffs would have the motivation or financial resources to proceed with individual litigation. According to plaintiffs, membership in a class is many individuals' best chance of achieving some form of recovery, albeit a de minimus recovery. *See, e.g., Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997) (possibility of de minimus recovery should not bar class action where, absent class certification, a potential plaintiff class is unlikely to "be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case").

Accepting as true the premise that nonstick cookware coatings have the potential to cause serious physical injury, the Court must nevertheless reject plaintiffs' argument. As discussed with regard to adequacy of representation, above, the representative plaintiffs' decision to reserve from this litigation any claims for personal injury or medical monitoring might prevent a participating class member from recovering on either claim in the future. Such a possibility—coupled with the immense manageability issues presented by the inherent, ubiquitous nature of the product and the overly-inclusive class definitions—prevents this Court from finding a class approach superior to individual litigation.

## III. CONCLUSION

Accordingly, the Court finds plaintiffs have failed to fulfill several prerequisites to class certification, namely, the typicality and adequacy of representation requirements under Rule 23(a) of the Federal Rules of Civil Procedure, and have failed to establish any of the additional requirements set forth under Rule 23(b). They also have failed to satisfy two crucial implicit requirements, a class definition that ensures the presence of an objectively ascertainable class, and a clear showing that all representative plaintiffs actually are members of the class.

Plaintiffs' motion to certify the class is denied with regard to all purported class actions now before the Court. All statutes of limitations periods are tolled for ninety (90) days from the date of this Order to enable individuals or estates of individuals meeting the criteria set forth in plaintiffs' proposed class definitions to file separate complaints in the appropriate federal or state district court.

IT IS ORDERED.