IN THE SUPREME COURT OF NORTH CAROLINA

No. 322A24

Filed 12 December 2025

EMPIRE CONTRACTORS, INC.

v.

TOWN OF APEX

Appeal pursuant to N.C.G.S. § 7A-27(a)(4) from an order granting plaintiff's motion for class certification entered on 1 April 2024 by Judge Gale M. Adams in Superior Court, Wake County. Heard in the Supreme Court on 16 September 2025.

*Milberg Coleman Bryson Phillips Grossman, PLLC, by James R. DeMay, Daniel K. Bryson, J. Hunter Bryson, and Amanda M. Memmler, for plaintiff-appellee.*

*Hartzog Law Group, LLP, by Katherine Barber-Jones and Dan M. Hartzog Jr., for defendant-appellant.*

DIETZ, Justice.

For many years, the Town of Apex charged "recreation fees" to developers constructing new subdivisions in the rapidly growing town. These fees were a substitute for developers dedicating a portion of the subdivision for use as a public park or other recreation area. By law, the town was required to use the recreation fees to create or improve its own public recreation areas near the developments that paid for them.

Plaintiff Empire Contractors, Inc. brought this putative class action lawsuit seeking a declaration that the town's recreation fees are illegal and must be refunded.

The trial court certified a class that included all of Empire's claims for declaratory relief. The town then appealed, arguing that the common issues for the putative class did not predominate over the many individualized issues. The town also argued that a class action was not the superior method of adjudicating these legal claims.

As explained below, we agree with the town that, in the class certified by the trial court, individualized issues predominate over the common issues of law and fact. In particular, the class includes several claims for declaratory relief that involve fact-intensive issues such as the fair market value of real property or the cost that a particular development imposes on the town. Resolving these fact issues would cause the case to "degenerate into a series of mini-trials" for each class member that would vastly overshadow the common legal issues. *See Jackson v. Home Depot U.S.A., Inc.*, 388 N.C. 109, 114 (2025).

As a result, we vacate the trial court's class certification order and remand for further proceedings. On remand, the trial court should conduct a new class certification analysis based on the claims that do not involve individualized fact issues. In that analysis, the court should consider whether fracturing this declaratory judgment action—with some claims being pursued in a class action and others left to individual actions—creates potential claim-splitting concerns or is otherwise no longer the superior means of adjudicating the remaining claims.

**Facts and Procedural History**

The North Carolina General Statutes provide that a local government "may by ordinance regulate the subdivision of land within its planning and development regulation jurisdiction." N.C.G.S. § 160D-801 (2023). Among other permissible regulations, local governments may require developers to either dedicate a portion of the subdivision to create a public recreation area or, instead, pay a fee that the local government will use to create or improve recreation spaces "within the immediate area" of the subdivisions that paid for them:

> Recreation Areas and Open Space. — The regulation may provide for the dedication or reservation of recreation areas serving residents of the immediate neighborhood within the subdivision or, alternatively, for payment of funds to be used to acquire or develop recreation areas serving residents of the development or subdivision or more than one subdivision or development within the immediate area.

N.C.G.S. § 160D-804(d).

The statute requires any formula for calculating a fee in lieu of dedication to be "based on the value of the development or subdivision for property tax purposes." *Id.* But the General Assembly enacted a local law exempting the Town of Apex from this requirement and instead permitting the town to impose a recreation fee that is not based on property tax value so long as the fee does not "exceed the fair market value of the land area that would have otherwise been required to be dedicated." Act of June 21, 1996, ch. 722, § 1, 1995 N.C. Sess. Laws 408, 408. The town later enacted an ordinance creating a recreation fee consistent with this local act and began

charging the fee to developers.

In 2017, Empire sought approval to develop a twenty-home subdivision in the town, known as Goldenview Acres. Empire alleges that, as part of the subdivision plan approval, the town charged Empire a recreation fee of $64,438 despite also requiring Empire to dedicate a portion of its development for a "greenway easement" and "open space areas." Empire alleges that the town did not use the recreation fee to create public recreation areas near Goldenview Acres and instead commingled the fees with other town revenue.

Empire later brought this putative class action lawsuit seeking a declaration that the town's recreation fees charged to all developers "exceed the lawful authority of the town" or, alternatively, are unconstitutional because the fees are not "roughly proportional" to each subdivision's impact on the town. Empire sought a refund of all illegally collected fees under N.C.G.S. § 160D-106, the statute that governs local development fees not authorized by law.

After a hearing, the trial court certified a class of all persons who paid recreation fees to the Town of Apex beginning in November 2017. In the class certification order, the trial court identified four common claims for declaratory judgment:

> a. Whether the Recreation Fees violate N.C.G.S. § 160D-804(d) because Class Members dedicate or reserve recreation or open space areas in their subdivisions for the benefit of the subdivision residents;

    b. Whether the Recreation Fees violate N.C.G.S. § 160D-804(d) and the Town's Charter because the amount of the Recreation Fees is not based on the property's fair market value at the time the initial development application submittal is made to the Town;

    c. Whether the Recreation Fees violate N.C.G.S. § 160D-804(d) because the Fees are not used by the Town to acquire and develop recreation or open space areas in the immediate area of the Class Member's subdivision, and/or the Fees are not used by the Town for the particular benefit of the Class Member's subdivision;

    d. Whether the Recreation Fees are an unconstitutional condition because they are not roughly proportional to the costs of any impact of the proposed development on the Town's parks and recreation facilities.

The trial court also found that if class members prevailed on any of these claims, there was an additional common question concerning whether class members are "entitled to a refund of all unlawful Recreation Fees charged and collected by the Town during the Class Period, plus interest at the rate of 6% per annum from the date of payment pursuant to N.C.G.S. § 160D-106."

After entry of the trial court's class certification order, the town appealed directly to this Court as provided by N.C.G.S. § 7A-27(a)(4).

## Analysis

### I.    Standard of review for class certification

On appeal, the town points to two alleged errors in the trial court's class certification analysis: (1) the court's determination that "common issues predominate over issues affecting only individual class members," and (2) the court's

determination that "a class action is superior to other available methods to adjudicate the controversy."

We begin by addressing the appropriate standard of review for these two arguments. The "general standard of review" for class certification is abuse of discretion. *Fisher v. Flue-Cured Tobacco Coop. Stabilization Corp.*, 369 N.C. 202, 209 (2016). We use the term "general" here because the trial court's ultimate decision to certify the class is a discretionary one. *Id.*

But within the class certification analysis, there are discrete components with different standards of review. *Id.*; *see also Jackson*, 388 N.C. at 113. One of these components involves the legal criteria that must be satisfied before a class can be certified. This includes the so-called "commonality" and "predominance" requirements, which examine whether there are common issues of law or fact and whether those common issues predominate over issues that are individualized and specific to each class member. *Jackson*, 388 N.C. at 113. These commonality and predominance requirements are questions of law that we review de novo. *Fisher*, 369 N.C. at 209.

The legal criteria for class certification also include a number of other court-created requirements designed to protect the absent class members, including "(1) that the class representatives have the ability to fairly and adequately represent the interest of all class members; (2) that there are no conflicts of interest between the class representatives and the unnamed class members; (3) that the class

representatives have a genuine personal interest in the outcome of the suit; and (4) that the class representatives have the ability to adequately represent class members outside of the jurisdiction; (5) that the proposed class members are so numerous that it is impractical to bring them all before the court; and (6) that it is possible to provide sufficient notice to all putative class members." *Jackson*, 388 N.C. at 113. These legal criteria are also questions of law. *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 280 (1987); *Jackson*, 388 N.C. at 113. As with all questions of law, we review them de novo. *Beroth Oil Co. v. North Carolina Dep't of Transp.*, 367 N.C. 333, 338 (2014); *Jackson*, 388 N.C. at 114.

Beyond these legal criteria, there are also many discretionary components to class certification. This is because the trial court has broad discretion to determine whether, and how, class certification should take place. For example, although the question of whether adequate notice can be given to class members is a legal one, the "actual manner and form of the notice is largely within the discretion of the trial court." *Crow*, 319 N.C. at 283. Similarly, although the existence of disqualifying conflicts of interest among class members is a legal question, trial courts have discretion in "evaluating potential conflicts of interest between class members and weighing any potential conflicts" in order to craft an appropriate class and select appropriate class representatives. *Fisher*, 369 N.C. at 212. Finally, unlike the objective legal criteria that are necessary to certify a class, there are other, more subjective considerations in class certification such as the superiority of the class

action mechanism. This superiority analysis "continues to be a matter left to the trial court's discretion." *Crow*, 319 N.C. at 284.

Applying this precedent here, we employ different standards of review when assessing the two different arguments raised by the town. The town first challenges the trial court's determination that "common issues predominate over issues affecting only individual class members." This is one of the legal criteria discussed above and is a question of law that we review de novo. *See Jackson*, 388 N.C. at 114. The town also challenges the trial court's determination that "a class action is superior to other available methods to adjudicate the controversy." This superiority determination is part of the discretionary component of class certification. *See Crow*, 319 N.C. at 284. We review this issue solely for abuse of discretion. *See Jackson*, 388 N.C. at 114.

## II.    The predominance requirement

Having set out the appropriate standard of review, we turn to the town's first argument, concerning predominance. As noted above, "class certification is appropriate only when there are common issues of law or fact that predominate over issues affecting only individual class members." *Id.* (cleaned up). "When examining the predominance question, courts typically evaluate whether, despite common issues of law or fact, there are individualized, fact-intensive determinations that would ultimately force the class action to degenerate into a series of mini-trials." *Id.* (cleaned up). Not all individualized issues will preclude class certification on predominance grounds. For example, there could be a fact issue specific to each class member but

for which there is an "efficient means of resolving it on a class-wide basis." *Id.* at 120. The problematic fact issues typically are those so individualized that they will require separate evidence for each class member and then separate resolution by a factfinder.

In this case, Empire seeks a declaratory judgment that the town's recreation fees are unlawful and must be refunded. To support this claim, Empire asserts what are essentially a series of alternative legal claims, each of which independently supports the request for declaratory relief.

For example, as noted above, a local act modified N.C.G.S. § 160D-804(d) to permit the town to charge a recreation fee not based on property tax value so long as the fee does not "exceed the fair market value of the land area that would have otherwise been required to be dedicated." Act of June 21, 1996, § 1, 1995 N.C. Sess. Laws at 408. Empire alleges that the town's recreation fees are unlawful because they exceed this statutory cap.

In addition, N.C.G.S. § 160D-804(d) permits "a combination or partial payment of funds and partial dedication of land." N.C.G.S. § 160D-804(d). Empire alleges that the town's recreation fees are unlawful because they do not account for developers who chose to "dedicate or reserve recreation or open space areas in their subdivisions for the benefit of the subdivision residents" in addition to paying the fee.

Similarly, the statute provides that the recreation fees "shall be used only for the acquisition or development of recreation, park, or open space sites" and that these sites must be "within the immediate area" of the subdivisions that paid the fees. *Id.*

Empire alleges that the fees are unlawful because the town commingled them with general town revenue and did not use them to develop recreation spaces in the immediate area of the relevant subdivisions.

Finally, there is a constitutional limit on the scope of this sort of development fee: the fee must have an "essential nexus" and be "roughly proportional" to the impact of the specific development on nearby town parks, greenways, or other recreation areas. *See Anderson Creek Partners, L.P. v. County of Harnett*, 382 N.C. 1, 28–29 (2022). Empire alleges that the town's recreation fees are unconstitutional because they are not "roughly proportional to the costs of any impact of the proposed development" on the town's parks and recreation areas.

The trial court expressly held that each of these legal claims is a common issue that justifies class certification. The problem with this analysis is that the trial court never addressed the highly individualized issues that many of these claims present. Take, for example, Empire's claim that the recreation fees exceeded "the fair market value of the land area that would have otherwise been required to be dedicated." *See* Act of June 21, 1996, § 1, 1995 N.C. Sess. Laws at 408. This claim of declaratory relief would require calculation of the fair market value of each class member's property. After all, a court cannot determine if a recreation fee exceeded the fair market value of certain real property without knowing what that fair market value is.

Calculating the fair market value of real property is an intensely individualized, fact-specific endeavor. *See Dep't of Transp. v. M.M. Fowler, Inc.*, 361

N.C. 1, 5–7, 13 (2006). For this reason, we have previously rejected class certification on predominance grounds where the class members' claims involve calculating the fair market value of their property. *See Beroth Oil*, 367 N.C. at 335.

In *Beroth Oil*, the plaintiffs sought to certify a class of several hundred property owners impacted by a Map Act recording in Forsyth County. *Id.* at 335–36. The plaintiffs asserted that the Map Act was a taking and that they were entitled to just compensation. *Id.* at 335.

We affirmed the trial court's denial of class certification because a "discrete fact-specific inquiry is required" to calculate the fair market value of the property subject to a taking. *Id.* at 343. As a result, each property owner had a right "to present to the fact finder a comprehensive analysis of the value of the land subject to the condemnation." *Id.* This meant that "the individual factual issues tied to each unique parcel of land far outnumber the common issues." *Id.* at 347. We therefore held "that common issues of fact or of law would not predominate." *Id.*

The same is true here. Every putative class member in this case would have a right "to present to a fact finder" evidence supporting the valuation of the property it otherwise would have dedicated instead of paying the recreation fee. *See id.* at 343. The town would have a right to present its own counterevidence. The result is that calculating the fair market value of each class member's property would create a "series of mini-trials" that would dwarf the adjudication of the common issues in this declaratory judgment action and predominate the entire lawsuit. *See Jackson*, 388

N.C. at 114, 120. Accordingly, the inclusion of this claim for declaratory relief defeats the predominance prong of class certification.

Other claims in this case similarly present predominance problems. For example, to prevail on the claim that the recreation fees are unconstitutional, class members must show that the fees they paid are not "roughly proportional" to the impact of their specific developments on nearby town parks, greenways, or other recreation areas. *See Anderson Creek Partners*, 382 N.C. at 38. As we observed in *Anderson Creek*, this proportionality analysis is a fact-intensive one in which the parties are entitled "to conduct discovery and present evidence" concerning the alleged impact of the development on the surrounding town services. *Id.* at 43. As with the issue of fair market value, this proportionality issue ultimately will require individualized assessments and resolution by a factfinder. Thus, it too will predominate over the common issues raised in this declaratory judgment action. *See Jackson*, 388 N.C. at 114, 120.

In sum, the class certified by the trial court does not meet the legal criteria for class certification because it includes claims with highly individualized fact issues that defeat the predominance prong of class certification. We must therefore vacate the trial court's order and remand for further proceedings.

## III. The superiority analysis

Because we vacate the trial court's order and remand this matter based on the trial court's predominance analysis, we need not address the town's challenge to the

court's superiority analysis. As we have observed in several recent class certification cases, these arguments "may be mooted by entry of a new order on remand." *See Surgeon v. TKO Shelby, LLC*, 385 N.C. 772, 779 (2024); *Jackson*, 388 N.C. at 119. But as with those earlier cases, there are issues that arise from our ruling that "warrant further discussion to guide the trial court's analysis on remand." *Id.*

In particular, the inability to pursue all of the claims for declaratory relief in a class action may impact the trial court's superiority analysis on remand. This Court has long recognized "the common law rule against claim-splitting" which prohibits multiple lawsuits based on claims all stemming from a single wrong. *Bockweg v. Anderson*, 333 N.C. 486, 492 (1993). This means that once a judgment is entered, that judgment's res judicata effect "extends not only to matters actually determined but also to other matters which in the exercise of due diligence could have been presented for determination in the prior action." *Gaither Corp. v. Skinner*, 241 N.C. 532, 535–36 (1955).

This claim-splitting rule, which is widely followed in the federal courts and our sister states as well, can create preclusion issues that prevent class certification. *See, e.g.*, *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 366–68 (S.D. Iowa 2008); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 339 (S.D.N.Y. 2002). Here, for example, the resolution of the class action claim for declaratory relief might bar class members from pursuing the remaining claims in a second, individual declaratory judgment action. Likewise, class members who promptly pursue their

individual claims might secure a judgment before resolution of the class claims, creating preclusion problems within the class.

The parties did not brief this claim-splitting issue on appeal, instead focusing solely on the superiority of the broader class initially certified by the trial court. We are therefore reluctant to resolve this question now, without the benefit of input from the parties. We leave it to the trial court, on remand, to hear the parties' arguments on this question and determine whether it creates a bar to class certification or whether other factors resulting from the fragmentation of this class action render it no longer a superior means of adjudicating the claims. *See Jackson*, 388 N.C. at 121.

## Conclusion

We vacate the trial court's class certification order and remand for further proceedings.

VACATED AND REMANDED.

Justice BERGER concurring.

I concur with the majority but write separately to highlight the constitutionally suspect nature of the town's collection and management of the recreation fees at issue. Although not argued, Empire's allegations that the recreation fees have been commingled with general town revenue and have not been used to develop recreation spaces near the subdivisions raise threats to this State's constitutional protections for economic liberty. *See* N.C. Const. art. I, § 1 ("We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, *the enjoyment of the fruits of their own labor*, and the pursuit of happiness." (emphasis added)); N.C. Const. art. I, § 19 ("No person shall be . . . in any manner deprived of his life, liberty, or property, but by the law of the land.").

"The fundamental right to property is as old as our state. From the very beginnings of our republic we have jealously guarded against the governmental taking of property." *In re Harris Teeter, LLC*, 378 N.C. 108, 132 (2021) (Berger, J., dissenting) (cleaned up). Indeed, the very "mission" of the law, "far from being able to oppress the people, or to plunder their property, even for a philanthropic end, . . . is to protect the people, and to secure to them the possession of their property." FRÉDÉRIC BASTIAT, *THE LAW* 50 (Ludwig von Mises Inst. 2007) (1850). The town's recreation fee scheme seems to be at odds with this principle.

"This Court's duty to protect fundamental rights includes preventing arbitrary government actions that interfere with the right to the fruits of one's own labor." *King v. Town of Chapel Hill*, 367 N.C. 400, 408 (2014). And even where the government acts in furtherance of a desirable goal, any state action burdening economic activity must be "reasonably necessary to promote the accomplishment of a public good, or to prevent the infliction of a public harm." *Kinsley v. Ace Speedway Racing, Ltd.*, 386 N.C. 418, 424 (2024) (cleaned up). In addition, even if the asserted purpose for the governmental interference is reasonable, a plaintiff "may rebut that assertion with evidence demonstrating that the State's asserted purpose is not the true one, and instead the State is pursuing a different, unstated purpose." *Id.* at 425.

If Empire's allegations are true, then the town has collected fees from developers under the premise that the money will be used for recreation purposes. The town chose to do this through the fees instead of tax collection. After all, politicians revel in limiting political accountability while delivering with other people's money. But even if extracting fees to build pickleball courts may be reasonably necessary, hoarding the money is not. The town appears to have leveraged a narrow statutory provision as a means for general revenue collection. Such a scheme cannot be a permissible interference with economic liberty, and this is, in reality, legal plunder under the guise of philanthropy. But here, the emperor truly has no pickleball courts.